IN RE the TERMINATION OF PARENTAL RIGHTS TO DARRYL T.–H. and Durrell T.–H., Persons Under the Age of 18:

STATE of Wisconsin, Petitioner,

DARRYL T.–H. and Durrell T.–H., Appellants,

v.

MARGARET H., Respondent-Petitioner.

Supreme Court

*No. 99–1441. Oral argument March 2, 2000.—Decided May 16, 2000.*

**2000 WI 42**

(Also reported in 610 N.W.2d 475.)

608

For the respondent-petitioner there were briefs by *Jennifer L. Abbott, Jeffrey A. Kingsley* and *Abbott & Kingsley*, Shorewood, and oral argument by *Jennifer L. Abbott*.

For the appellants there was a brief by *Michael J. Vruno, Jr.,* and *Legal Aid Society of Milwaukee, Inc.,* Milwaukee, and oral argument by *Michael J. Vruno, Jr.*

For the petitioner there was a brief and oral argument by *Janet C. Protasiewicz,* assistant district attorney.

¶ 1.   ANN WALSH BRADLEY, J.   Margaret H., the maternal grandmother of twin boys, seeks review of an unpublished court of appeals decision that reversed a circuit court order dismissing the petition to terminate the parental rights of the twins' mother.[1] The court of appeals determined that the circuit court erred in its assumption that the twins' relationship with their birth family would be severed upon the termination of parental rights followed by adoption.

¶ 2.   Margaret H. contends that the court of appeals' determination not only contradicts well-established law, but also upon remand unnecessarily limits the circuit court's exercise of discretion. We agree with Margaret H.'s contentions. However, because we conclude that the case must be remanded for further consideration of all of the relevant factors in determining the best interests of the twins, we affirm the court of appeals.

¶ 3.   Darryl and Durrell T.–H., born in February 1993, lived with their mother, Carol H., for approximately one month before she abandoned them. Margaret H., the maternal grandmother, then

---

[1] *In re the Termination of Parental Rights to Darryl T.–H. and Durrell T.–H.,* No. 99–1441, unpublished slip op. (Ct. App. July 27, 1999) (reversing order of Circuit Court for Milwaukee County, M. Joseph Donald, J., and remanding cause for further proceedings).

assumed primary responsibility for the twins, who resided with her for a period of three months. In May 1993, Darryl and Durrell were adjudged children in need of protection or services (CHIPS), and a dispositional order was filed placing the twins outside their mother's home. *See* Wis. Stat. §§ 48.13(10) and 48.355 (1997–98).[2]

¶ 4.  At the age of four months, the twins were removed from their grandmother's home and placed with a maternal aunt. Darryl and Durrell lived with their aunt until early 1994, when they were transferred to a foster home. This placement lasted for a total of four months and was the first in a series of placements in foster care. The second placement lasted a week. The twins then spent a significant portion of their young lives, approximately four years, with their third foster mother. Because Thelma D., the foster mother, was unwilling to adopt the twins, they were uprooted yet again and placed with Debra G. in March 1998. Debra G. is the current foster mother and has expressed a desire to adopt Darryl and Durrell.

¶ 5.  Margaret H. was originally designated as the twins' guardian and primary caregiver in early 1995. The permanent placement plan contemplated relative placement with her. However, the social service agency informed Margaret H. that her apartment was not adequately sized to accommodate the twins, as well as the five other grandchildren for whom she cared. While the twins remained in foster care, Margaret H. began saving money and searching for suitable housing.

¶ 6.  In April 1996, the agency announced its intention of finding the twins a permanent home and

---

[2] All future references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise indicated.

possibly altering the relative placement plan to a termination of parental rights. Margaret H. had been unable to find housing at the time, but finally saved enough money to purchase a home in April 1998. A social worker informed her, however, that an "adoptive resource" for the twins had been located. During the period in which Darryl and Durrell remained in foster care, they nevertheless continued contact with Margaret H. and their other siblings.

¶ 7. The State filed a petition for the termination of parental rights on May 11, 1998. Subsequently, in the first phase of the termination proceeding, the circuit court determined that grounds existed to terminate the rights of Carol H. *See* Wis. Stat. §§ 48.415(1)(a)2 and 48.415(6). Upon the finding of grounds to terminate parental rights, the court proceeded to the second phase of the proceeding. The court held a dispositional hearing under Wis. Stat. § 48.427 to determine whether the termination of parental rights would be in the best interests of the twins. During the hearing, the circuit court accepted testimony from two psychologists, two social workers, a maternal aunt, Debra G., and Margaret H.

¶ 8. The psychologists and the social workers expressed a preference for placement of the twins with Debra G., followed by adoption. They opined that she would provide both stability and attention to the particularized needs of Darryl and Durrell, who were diagnosed with Reactive-Attachment and Attention-Deficit disorders. However, one of the psychologists stated his concern that the twins would suffer harm if contacts with Margaret H. and their other siblings were discontinued.

¶ 9. Debra G. testified that she intended to foster the twins' relationship with their birth family and that

she envisioned continued visitation even upon adoption. Evidence revealed that Debra G. had initiated visits with the twins' former foster family and that she had encouraged and maintained the twins' contact with Margaret H. and their other siblings.

¶ 10. At the close of testimony in the dispositional hearing, the circuit court issued its oral decision, which was later memorialized in a April 6, 1999 written order including the findings of facts and conclusions of law. After thanking Debra G. for being a "godsend" for the twins, the court continued:

> I want you to realize that your efforts, the efforts of your family do not go unrecognized by this Court. And I am certain that you will have a lasting and lifelong imprint on the lives of these children.
>
> But when I weigh that against the efforts of [Margaret H.], the fact that she is the grandmother and guardian of these children, and although the record is—evidence on both sides of the issue on whether or not the relationship is substantial, this Court finds that it is a substantial relationship, and I also find it would be harmful to these boys to sever that relationship. [Margaret H.] has never wavered in her desire or her love for her grandchildren. She has had many difficulties to overcome. . . .
>
> Although the mother clearly has abandoned or failed to assume parental responsibility for these boys. . .Margaret [H.] has been trying.
>
> She has made every attempt to put herself in a position and at this time I just can't take that away from her.

¶ 11. The court of appeals reversed and remanded. First, the court set forth the appropriate legal standard governing the disposition of a petition to terminate parental rights: the best interests of the child. Then, it delineated the factors a circuit court

614

must examine in determining whether a termination lies in the best interests of the child. Wis. Stat. § 48.426(3).

¶ 12. After noting that the circuit court had failed to consider the entire range of factors enumerated under Wis. Stat. § 48.426(3), and had also failed to apply the appropriate legal standard, the court of appeals specifically stated:

> Significantly, the [circuit] court's focus on what we have denominated as point one in its expressed rationale is, on its face, wrong; no one—not Debra G., not any of the psychologists, not any of the social workers, and not even the grandmother opined that either termination or continued placement with Debra G. would *sever* the twins' relationships with their blood relatives. Thus, absent some support in the record, and we perceive none, the [circuit] court's apparent assumption that the twins' relationships with their blood relatives *would* be severed is "clearly erroneous." (Emphasis supplied.)

*In re the Termination of Parental Rights to Darryl T.–H. and Durrell T.–H.*, No. 99–1441, unpublished slip op., 7–8 (Ct. App. July 27, 1999). The court of appeals then reversed and remanded the case for a consideration of all of the relevant factors and an application of the appropriate legal standard under its interpretation of Wis. Stat. § 48.426(3).

¶ 13. This case presents essentially one issue for review: whether the court of appeals misinterpreted Wis. Stat. § 48.426(3)(c) in rejecting the circuit court's assumption that the twins' relationship with Margaret H. would be severed upon the termination of parental rights. The resolution of this issue initially entails statutory interpretation, which is a question of law that we

decide independently of the decisions rendered by the circuit court and the court of appeals. *In re the Termination of Parental Rights of Brittany H.*, 2000 WI 28, ¶ 16, 233 Wis. 2d 344, 607 N.W.2d 607.

¶ 14.   Our goal in statutory interpretation is to discern the intent of the legislature. *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999). We look first to the language of the statute. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the language is clear, we need not look further to determine the meaning of the statute. *State v. Koopmans*, 210 Wis. 2d 670, 676, 563 N.W.2d 528 (1997).

¶ 15.   Wisconsin Stat. § 48.426(3) sets forth the factors a circuit court must examine in determining whether the termination of parental rights is in the best interests of the child. The statute provides:

> FACTORS.   In considering the best interests of the child under this section the court shall consider but not be limited to the following:
> (a)   The likelihood of the child's adoption after termination.
> (b)   The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
> (c)   Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
> (d)   The wishes of the child.
> (e)   The duration of the separation of the parent from the child.
> (f)   Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the

conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

¶ 16.    Subsection (c) represents the focal point of our review. Under this subsection, the circuit court must evaluate the existence of "substantial relationships" between a child and the child's family, and then gauge whether the child will suffer harm from a severance of those relationships. Wis. Stat. § 48.426(3)(c). The question posed by Margaret H. is whether the statute contemplates an examination of the legal relationship between a child and the child's family or the emotional connections existing between them.

¶ 17.    The term "substantial," which modifies "relationships" in the first clause of Wis. Stat. § 48.426(3)(c), underscores that the court's initial examination centers on the emotional connections between a child and the child's birth family. A legal relationship either exists or does not exist. It cannot be quantified or measured as "substantial," because a legal relationship does not vary in degrees or increments.

¶ 18.    Approached from another angle, Wis. Stat. § 48.426(3)(c) requires courts to consider "whether" there are substantial relationships between a child and the child's family. If we construe these relationships strictly as legal relationships, there is no need for the circuit court to assess *whether* such a relationship exists between a child and the family. A legal relationship is created by virtue of the child's birth.

¶ 19.    Therefore, the substantial relationships referenced in Wis. Stat. § 48.426(3)(c) include the child's emotional and psychological connections to the child's birth family. These emotional and psychological

617

connections might be severed upon the termination of parental rights.

¶ 20.   We have consistently recognized that adoption severs the legal rights, connections, and duties between the birth family and the child. *See, e.g., In re Marriage of Soergel,* 154 Wis. 2d 564, 573–74, 453 N.W.2d 624 (1990); *In re Estate of Topel,* 32 Wis. 2d 223, 227, 145 N.W.2d 162 (1966). *See also* Wis. Stat. § 48.92.[3] The termination of parental rights, which generally precedes an adoption, likewise yields the same outcome. *In re Brandon S.S.,* 179 Wis. 2d 114, 147, 507 N.W.2d 94 (1993); *In re the Custody of Jeffrey A.W.,* 221 Wis. 2d 36, 47, 584 N.W.2d 195 (Ct. App. 1998).

¶ 21.   Neither the State nor the guardian ad litem denies the legal severance stemming from a termination of parental rights. We thus interpret Wis. Stat. § 48.426(3)(c) to unambiguously require that a circuit court evaluate the effect of a legal severance on the broader relationships existing between a child and the child's birth family. These relationships encompass

---

[3] Wisconsin Stat. § 48.92 provides in relevant part:

**Effect of Adoption. (1)** After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

(2) After the order of adoption is entered the relationship of parent and child between the adopted person and the adopted person's birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and legal consequences of the relationship shall cease to exist. Notwithstanding the extinction of all parental rights under this subsection, a court may order reasonable visitation under s. 48.925.

emotional and psychological bonds fostered between the child and the family.

¶ 22. We turn next to the court of appeals decision in this case, particularly the disputed language that has generated the present review. In discussing the circuit court's examination of Wis. Stat. § 48.426(3)(c), the court of appeals concluded that the circuit court's finding of a severance under the statute was clearly erroneous. *In re Darryl T.–H. and Durrell T.–H.*, unpublished slip op. at 8.

¶ 23. The court of appeals' expressed rationale was rooted in the record, including Debra G.'s stated intent to continue contact between the twins and their birth family, as well as evidence of her previous efforts at encouraging the twins' visits with their family. Reasoning that the record offered no support to a circuit court finding that the relationship between the twins and their family "*would* be severed," the court of appeals rejected as clearly erroneous the circuit court's conclusion that the termination of parental rights would sever the relationship. *Id.* (emphasis in original).

¶ 24. This determination by the court of appeals presents a source of confusion and concern for Margaret H. She contends that the court of appeals' declaration of circuit court error not only contradicts well-established law, but also unnecessarily forecloses the circuit court's exercise of discretion. We share Margaret H.'s concern.

¶ 25. As a matter of law, the termination of parental rights results in a legal severance of the relationship between a child and the child's family. *Brandon S.S.*, 179 Wis. 2d at 147; *Jeffrey A.W.*, 221 Wis. 2d at 47. However, the court of appeals

approached the issue as a question of fact and concluded that because the evidence contained in the record did not reveal an actual severance, the circuit court's conclusion was "on its face, wrong." *In re Darryl T.–H. and Durrell T.–H.*, unpublished slip op. at 8. In vocal defense of the court of appeals, the State and the guardian ad litem assert that the court of appeals was justified in focusing on whether the termination of parental rights would lead to an actual severance of ties between the twins and their family.

¶ 26.   This approach, however, conflicts with precedent and is based on an erroneous interpretation of Wis. Stat. § 48.426(3)(c). The statute directs focus on the legal severance resulting from a termination of parental rights and requires courts to assess the harmful effect of this legal severance on the emotional and psychological attachments the child has formed with his or her birth family. There remains no doubt under the law that a termination of parental rights works a legal severance.

¶ 27.   The ultimate determination of whether to terminate parental rights is discretionary with the circuit court. *In re the Termination of Parental Rights of Michael I.O.*, 203 Wis. 2d 148, 150, 551 N.W.2d 855 (Ct. App. 1996). As Margaret H. asserts, the court of appeals' statutory interpretation severely limits the circuit court's discretionary authority to determine whether the termination of parental rights lies in the best interest of the child. Under the court of appeals' interpretation, the circuit court will be precluded from considering the adverse effects stemming from the dissolution of the legal rights and duties of the birth family.

¶ 28.   Moreover, the circuit court will apparently no longer be afforded the flexibility to discount informal visitation arrangements. Instead, the court must allow the strength of promises and past efforts to guide its decision-making process, without consideration that a promise made today may be broken in the future. This complete reliance on an adoptive parent's promises to continue the child's visits with the birth family, as well as past efforts to do so, unnecessarily forecloses the circuit court's discretion and frustrates the court's evaluative role in determining whether to terminate parental rights.

¶ 29.   To the extent that the court of appeals' statement may be interpreted as insisting that the circuit court at least consider Debra G.'s promise to continue contact between the twins and their birth family, we note that Wis. Stat. § 48.426(3)(c) requires only that the circuit court examine the impact of a legal severance on the broader relationships existing between a child and his or her family. In its discretion, the court may afford due weight to an adoptive parent's stated intent to continue visitation with family members, although we cannot mandate the relative weight to be placed on this factor.

¶ 30.   In this case, the court may certainly choose to examine the probability that Debra G. will be faithful to her promise, at the same time bearing in mind that such promises are legally unenforceable once the termination and subsequent adoption are complete. *See* Patricia A. Hintz, Comment, *Grandparents' Visitation Rights Following Adoption: Expanding Traditional Boundaries in Wisconsin*, 1994 Wis. L. Rev. 483, 503 (1994). The circuit court may within its discretion consider her good faith promise, but it

should not be bound to hinge its determination on that legally unenforceable promise.

¶ 31. Notwithstanding the court of appeals' erroneous interpretation of Wis. Stat. § 48.426(3)(c), we agree with its decision to remand this case for further proceedings. The record indicates that the circuit court failed to consider all of the relevant statutory factors enumerated under Wis. Stat. § 48.426(3) in its dismissal of the petition to terminate parental rights. Margaret H. does not contest that the circuit court failed to articulate all of the applicable factors. She agrees that the case should be remanded.

¶ 32. An appellate court will sustain the circuit court's ultimate determination in a proceeding to terminate parental rights if there is a proper exercise of discretion. *Brandon S.S.*, 179 Wis. 2d at 150. A proper exercise of discretion requires the circuit court to apply the correct standard of law to the facts at hand. *In the Interest of Nadia S.*, 219 Wis. 2d 296, 305, 581 N.W.2d 182 (1998).

¶ 33. The best interests of the child is the polestar of all determinations under ch. 48, the Children's Code. *Brandon S.S.*, 179 Wis. 2d at 149. *See also In re Adoption of Tachick*, 60 Wis. 2d 540, 546–47, 210 N.W.2d 865 (1973). Wisconsin Stat. § 48.01 expresses this sentiment by stating that the best interests of the child is the paramount consideration in proceedings under the chapter.

¶ 34. Accordingly, the proper legal standard governing a proceeding to terminate parental rights is the best interests of the child. Wis. Stat. § 48.426(2). The factors that give contour to the standard are codified

under Wis. Stat. § 48.426(3) and serve to guide courts in gauging whether termination is the appropriate disposition.[4]

¶ 35.   While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor. The record here reveals that the circuit court failed to apply the best interests of the child standard and did not consider other pertinent factors besides Wis. Stat. § 48.426(3)(c). Although an evaluation of substantial relationships and the harm of a legal severance is indeed critical to the court's determination, exclusive focus on any one factor is inconsistent with the plain language of Wis. Stat. § 48.426(3).

¶ 36.   As the court of appeals observed, the record indicates that the circuit court apparently gave paramount consideration to Margaret H.'s interests rather than to the interests of Darryl and Durrell. Failure to apply the appropriate legal standard constitutes an erroneous exercise of discretion, and the court of appeals properly remanded the case for further consideration in light of the relevant legal standard. The circuit court on remand must evaluate all of the applicable factors enumerated under Wis. Stat. § 48.426(3), while focusing on the best interests of Darryl and Durrell.

¶ 37.   The State urges us to decide the termination issue as a matter of law and order the termination

---

[4] See also Judith Sperling Newton, *Voluntary Termination of Parental Rights and Adoption: A Practical Handbook for Judges, Lawyers, and Human Service Providers*, §§ 2.15–2.21 (1990).

of parental rights in this case.[5] We have on prior occasion noted the various approaches an appellate court may pursue when faced with inadequate findings. An appellate court may: 1) look to an available memorandum for findings and conclusions; 2) review the record anew and affirm if a preponderance of evidence clearly supports the judgment; 3) reverse if the judgment is not so supported; or 4) remand for further findings and conclusions. *In the Matter of the Termination of Parental Rights to T.R.M.*, 100 Wis. 2d 681, 688, 303 N.W.2d 581 (1981).

¶ 38.   However, we have expressed a preference for remanding to the circuit court when confronted with inadequate findings, particularly in family law or domestic relations actions. *Id.* Notwithstanding the sparse findings and conclusions in this case, we will not curtail the circuit court's discretion in this matter and substitute our judgment. An examination of the record is seldom adequate to render factual determinations that lie squarely within the province of the circuit court. *Id.* at 689. We thus decline to follow the State's recommended course of action.

¶ 39.   On remand, the circuit court should conduct further proceedings to determine the best interests of the twins in light of the present circumstances.[6] We recognize that the consideration of

[5] Additionally, the State insists we determine that the circuit court's finding of a "substantial relationship" between the twins and Margaret H. is clearly erroneous. The State has waived the argument, however, by failing to raise it before the court of appeals. Hence, we need not address this argument.

[6] We note that on a remand to address the appropriate grounds for the termination of parental rights, the relevant time period remains the time of the original hearing. *See In the*

present circumstances may delay the permanent placement of Darryl and Durrell, and we are mindful of the need for finality and stability in their lives. Yet, the twins have not remained frozen in time. During the course of these proceedings, they have had the opportunity to develop relationships with both their birth family and Debra G. It would defy the best interests of Darryl and Durrell to ignore these developments. The circuit court, however, should hasten to conduct a new hearing within 60 days.

¶ 40.   In sum, we determine that the court of appeals misinterpreted Wis. Stat. § 48.426(3)(c) in rejecting the circuit court's conclusion that the termination of parental rights would sever the relationship between Margaret H. and her grandsons. Although the court of appeals erroneously determined that there would be no severance based on the facts of the record, it nevertheless properly remanded this case to the circuit court for a consideration of all of the applicable factors under Wis. Stat. § 48.426(3). Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

*Matter of the Termination of Parental Rights to Kegel*, 85 Wis. 2d 574, 582, 271 N.W.2d 114 (1978); *State ex rel. Lewis v. Lutheran Soc. Servs.*, 59 Wis. 2d 1, 10, 207 N.W.2d 826 (1973). However, on a remand of the disposition to address whether termination would be in the best interests of the child, the circuit court should examine the present circumstances.