**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 3, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1564**

Cir. Ct. No. 2018TP55

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO M.K., JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

M. K.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed*.

¶1     BRASH, P.J.[1]   M.K. appeals an order of the trial court terminating his parental rights of M.K., Jr.   M.K. asserts that the court erroneously exercised its discretion in terminating his parental rights because its factual findings are not supported by the record.   We affirm.

## BACKGROUND

¶2     M.K. is the adjudicated father of M.K., Jr., who was born January 18, 2013.   M.K., Jr. has significant physical health issues—cardiomyopathy and reactive airway disease—for which he takes four different medications, two times each day, and has a prescribed inhaler.   He has medical appointments at various clinics every six months due to his condition, and also receives an echocardiogram every six months.   M.K., Jr. also has mental health issues:  he has been diagnosed with an anxiety disorder, and has behavioral issues for which he receives weekly therapy.

¶3     M.K., Jr. was removed from the home of his mother, C.M.,[2] in October 2016, when he was approximately three-and-a-half years old.   At that time, M.K. was incarcerated at the Milwaukee Secure Detention Facility for a misdemeanor conviction for child neglect stemming from an incident in July 2016, when he left M.K., Jr. home alone for several hours.   M.K. and C.M. were also involved in a domestic violence incident in September 2015, which resulted in a no contact order with C.M.   Consequently, all of M.K.'s contact with M.K., Jr.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statues are to the 2017-18 version unless otherwise noted.

[2] C.M. was named in this action as well, and her parental rights were also terminated as a result of these proceedings.   She filed a separate appeal, 2019AP1483, in which we upheld the order terminating her parental rights.

required a chaperone. Additionally, M.K. has a felony burglary conviction from September 2014.

¶4    M.K., Jr. was removed from C.M.'s care due to continuing concerns regarding his medical care. In October 2015, the Division of Milwaukee Child Protective Services (DMCPS) had received a referral about M.K., Jr. missing appointments at Children's Hospital. Additionally, it was also observed by health care providers that M.K., Jr. was regularly missing medication doses. The family was provided with intensive in-home services to assist with taking M.K., Jr. to appointments, giving him his medications in a timely manner, and getting those prescriptions refilled regularly. However, it was found that M.K., Jr. was still missing appointments and not consistently getting his medications.

¶5    The in-home services program was for a limited term. Extensions were granted due to continuing concerns about the consistency of M.K., Jr.'s care by C.M. The health care workers involved in M.K., Jr.'s case stressed to C.M. how important it was for M.K., Jr. to receive his medications regularly and attend all of his appointments as scheduled—he may eventually need a heart transplant, and inconsistent care could negatively impact his ability to receive one. Even when Children's Hospital arranged for transportation for M.K., Jr.'s appointments, there were multiple occasions where M.K., Jr. was not at home when the driver arrived.

¶6    As a result, M.K., Jr. was removed from the home and put into foster care. A petition for a Child in Need of Protection and Services (CHIPS) was filed in October 2016, with a dispositional order issued in February 2017. The order required that M.K. manage his mental health issues; that he not commit any further crimes, and follow through with any pending criminal charges; that he not

allow or commit any violent acts in front of M.K., Jr.; and that he and C.M. were to meet all of M.K., Jr.'s special needs—including all of his medical needs—on a daily basis. To meet these requirements, DMCPS was to provide services such as a psychological evaluation, individual therapy, domestic violence programming, and parental programming. M.K. was also required to have regular visitation with M.K., Jr.

¶7     M.K. failed to meet these requirements. He did not attend an appointment to start therapy, stating that he "[did] not want to bring up the past." He participated in domestic violence counseling and a fatherhood program, but the providers noted that he was not fully engaged and instead seemed to be attending simply to "check a box[.]" He failed to attend all of M.K., Jr.'s medical and therapy appointments. He also did not visit M.K., Jr. regularly, sometimes confirming a visit and then failing to show up, which greatly upset M.K., Jr.

¶8     As a result, a petition for the Termination of Parental Rights (TPR) of M.K. with regard to M.K., Jr. was filed on March 29, 2018. In the petition, the State alleged two grounds for termination: (1) M.K., Jr.'s continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2); and (2) M.K.'s failure to assume parental responsibility, pursuant to § 48.415(6).

¶9     The matter was scheduled for a jury trial on November 5, 2018; however, on that day M.K. decided that he wanted to enter a no contest plea to the ground of failure to assume parental responsibility. The court accepted his plea and the matter was set on for a contested dispositional hearing.

¶10    That hearing was held on March 28, 2019, and continued on May 17, 2019. The trial court found that M.K. had not "followed through" on numerous issues set forth in the petition: he did not attend all of M.K., Jr.'s medical

4

appointments; he did not consistently attend his scheduled visits with M.K., Jr.; and he failed to complete the services provided by DMCPS as required. The court further noted that M.K. did not attend any school visits for M.K., Jr. and "essentially has not been involved in any other aspects of [M.K., Jr.]'s life."

¶11 Additionally, the trial court observed that M.K., Jr.'s current placement was an adoptive resource with whom he had a "significant relationship[.]" The court further noted that if the parental rights of M.K., Jr.'s parents were not terminated, it is likely that he would "continue[] to be placed outside the parental home in light of the fact that his parents heretofore have not been able to demonstrate really the degree of consistency and substantial relationship of parenting him." Thus, termination would allow M.K., Jr. "to enter into a more stable and permanent relationship." For those reasons, the court held that it was in the best interests of M.K., Jr. to terminate the parental rights of M.K. as well as C.M. This appeal follows.

## DISCUSSION

¶12 On appeal, M.K. argues that the trial court erroneously exercised its discretion in terminating his parental rights because the record does not support the court's factual findings. "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. We will uphold the trial court's decision to terminate parental rights "if there is a proper exercise of discretion." *See id.*, ¶32. This requires that the trial court apply the correct standard of law to the facts of the case. *Id.*

¶13 In making its determination, "the best interests of the child is the paramount consideration" for the trial court. *Id.*, ¶33. To establish this, the trial

court should reference the factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition. *Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402.

¶14    Here, M.K. is not arguing that the trial court failed to properly consider the statutory factors; instead, he argues that the court's factual findings are not supported by the record. First, M.K. asserts that the court mistakenly stated that M.K., Jr. had been taken into custody by DMCPS because M.K. had left him alone—the incident that led to M.K.'s child neglect conviction. The court noted this incident in the context of its consideration of the second statutory factor: the age and health of the child at the time he was removed from the home and at the time of disposition. *See* WIS. STAT. § 48.426(3)(b).

¶15    In its discussion, the trial court seemed to suggest that the conviction was the impetus for M.K., Jr.'s detention, which is not accurate; as explained above, M.K., Jr. was removed from the home due to ongoing concerns regarding his medical care. Nevertheless, at the time M.K., Jr. was taken into custody, M.K. was in fact incarcerated for the child neglect conviction relating to M.K., Jr. That incident had occurred approximately three months prior to M.K., Jr.'s detainment, when M.K., Jr. was three years old. Therefore, we conclude that M.K.'s conviction was a relevant consideration with regard to the factor regarding the age and health of M.K., Jr. Thus, even though the court's finding was not completely factually accurate, it was not an erroneous exercise of discretion for the court to consider M.K.'s conviction in determining the best interests of M.K., Jr.

¶16    Another factual error alleged by M.K. was the trial court's finding that M.K. had "not attended any school visits[.]" On the contrary, M.K. testified

that he had gone to M.K., Jr.'s school and spoken with his teachers, which was corroborated by the case manager, who confirmed that M.K. had visited M.K., Jr.'s school.

¶17 The trial court made this remark in the context of considering whether M.K., Jr. had a substantial relationship with M.K., the third statutory factor. *See* WIS. STAT. § 48.426(3)(c). In making its findings, the court noted several other things that M.K. had "not followed through on," such as participating in all of the services provided by DMCPS and attending all of M.K., Jr.'s medical appointments. Moreover, the court stated that there were inconsistencies in his visits with M.K., Jr., which the court noted was due in part to his incarceration.

¶18 M.K. points out that the case manager testified that he had completed all of the required services with the exception of individual therapy, of which he attended a total of four sessions. However, it was noted in the TPR petition that the providers leading these programs felt that M.K. was not fully engaged and instead had participated in the programs simply to "check a box[.]"

¶19 With regard to M.K., Jr.'s medical appointments, both M.K. and the case manager testified that M.K. had attended the latest set of appointments that had occurred in October 2018. Indeed, the trial court noted that M.K. "does attend, although not all" of M.K., Jr.'s medical appointments, likely referencing previous appointments.

¶20 The trial court also commented on M.K.'s visiting schedule with M.K., Jr. The case manager stated that M.K. had attended eighty percent of his scheduled visits over the life of the case, stating that "[t]here have been times when he's been very consistent and times when he's been not so consistent." The case manager further observed that inconsistent parental visits cause great anxiety

7

in M.K., Jr., to the extent that he becomes physically aggressive; for example, after M.K. missed a visit just prior to the disposition hearing, M.K., Jr. was suspended from school for behavioral issues.

¶21    In fact, the trial court noted that a "key" consideration for the substantial relationship analysis was visitation. The court observed that despite M.K., Jr. having been placed out of the home since October 2016—almost three years from the time of the dispositional hearings—both M.K. and C.M. were still required to have supervised visits with M.K., Jr., as opposed to progressing to unsupervised or partially unsupervised visits, due to continued safety concerns relating to tending to M.K. Jr.'s medical needs.

¶22    We therefore conclude that the trial court's application of the substantial relationship standard to these facts was a proper exercise of its discretion. *See Margaret H.*, 234 Wis. 2d 606, ¶32.

¶23    Furthermore, the trial court discussed other significant facts in this case in applying the remaining best interest factors. With regard to the first factor—the likelihood of adoption after termination—the court noted that M.K., Jr. was currently placed with an adoptive resource with whom he had developed a "significant relationship[.]" *See* WIS. STAT. § 48.426(3)(a). The court observed that the wishes of M.K., Jr.—the fourth factor—are difficult to ascertain from a six-year-old, but noted that he had indicated that he wanted "to stop moving;" he had been in six different placements since being removed from his parents' care in October 2016. *See* Sec. 48.426(3)(d). The court also remarked that with regard to the fifth factor—the duration of the separation of the child from the parent— M.K., Jr. had not returned to the care of his parents since being detained by

8

DMCPS, although he had seen them during visits, albeit inconsistently. *See* Sec. 48.426(3)(e).

¶24 With regard to the sixth factor, the likelihood of future placements, the trial court noted that M.K., Jr. would likely remain in foster care if the TPR petition was denied. His case manager had testified that this was accurate, due to continuing concerns relating to the parents' abilities to tend to M.K., Jr.'s medical needs. Furthermore, the record indicates that at the time of the dispositional hearing, M.K. had an open case for possession of methamphetamines from an incident that occurred on November 7, 2018. He had also recently tested positive for THC as part of his pretrial monitoring. Moreover, he is a registered sex offender stemming from a juvenile adjudication, which had previously been a barrier to his finding stable housing. These are all relevant facts relating to the likelihood that M.K., Jr. would require continued placement in foster care.

¶25 In sum, despite some factual inaccuracies in the trial court's findings, the record overwhelmingly supports the court's finding that it was in the best interests of M.K., Jr. to terminate the parental rights of M.K. Therefore the court properly exercised its discretion in doing so. *See **Margaret H.**,* 234 Wis. 2d 606, ¶32. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9