**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 23, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1628**

Cir. Ct. No. **2020TP19**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.S.H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

     PETITIONER-RESPONDENT,

  V.

M.P.H-R.,

     RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 BRASH, C.J.[1] M.P.H.-R. appeals the order of the trial court terminating her parental rights to A.S.H. M.P.H.-R. argues that the court erred in its consideration of the evidence in relation to the requisite statutory factors for determining the best interests of A.S.H., and thus erroneously exercised its discretion in terminating M.P.H.-R.'s parental rights. Upon review, we affirm.

## BACKGROUND

¶2 M.P.H.-R. is the biological mother of A.S.H., who was born in December 2011 when M.P.H.-R. was fourteen years old. A.S.H.'s biological father is unknown.

¶3 In August 2012, M.P.H.-R. was the subject of an order for a child in need of protection or services (CHIPS) due to ongoing behavioral and mental health problems. M.P.H.-R. was placed in a group home, and A.S.H. was placed with her. However, in April 2013, M.P.H.-R. was admitted to Rogers Behavioral Health treatment center after attempting suicide. A CHIPS petition for A.S.H. was therefore filed, and she was placed in foster care; although M.P.H.-R. and A.S.H. had previously lived with M.P.H.-R.'s mother, M.H., A.S.H. could not be placed with M.H. because of the open CHIPS order concerning M.P.H.-R. Additionally, M.H. has an extensive history with the Bureau of Milwaukee Child Welfare with regard to her other children as well.[2]

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The Bureau of Milwaukee Child Welfare has since been renamed the Division of Milwaukee Child Protective Services.

¶4     A dispositional order relating to the CHIPS petition for A.S.H. was entered in July 2013, listing several conditions that had to be met by M.P.H.-R. before A.S.H. could be returned to her care. Those conditions included following through with her mental health treatment, and establishing that her mental health was being managed with "consistent stable behavior" such that admission for inpatient treatment was no longer necessary. M.P.H.-R. was also required to demonstrate an "understanding of child development and age appropriate discipline," as well as an understanding of how her unmet mental health needs could "lead to an unsafe environment" for A.S.H. Additionally, regular visitation with A.S.H. was required.

¶5     The CHIPS order was extended on an annual basis, and A.S.H. continued to live in foster care until January 2019, when A.S.H. was returned to M.P.H.-R.'s custody for a trial reunification. That trial reunification was revoked in May 2019. M.P.H.-R. had frequently contacted the police during the trial reunification because she was unable to handle A.S.H.'s behavioral issues and mental health needs. There were also a number of calls from other community entities during that time frame who expressed concerns for A.S.H.'s safety. Additionally, M.P.H.-R. had an infant son at that time for whom she was observed to have a "preference," and reportedly told A.S.H. that she "would not go through hoops to get her back if she was removed[.]" In short, it was determined that M.P.H.-R. continued to "view [A.S.H.] as the problem" and was deemed to be unable to meet A.S.H.'s needs long term.

¶6     As a result, a petition for the Termination of Parental Rights (TPR) of M.P.H.-R. with regard to A.S.H. was filed in February 2020. In the petition, the State's alleged grounds for termination included the continuing need of protection

or services for A.S.H., pursuant to WIS. STAT. § 48.415(2), and the failure of M.P.H.-R. to assume parental responsibility, pursuant to § 48.415(6).

¶7      In November 2020, M.P.H.-R. entered a no-contest plea to the failure to assume parental responsibility ground, and the State dismissed the continuing CHIPS ground.    However, M.P.H.-R. requested that a bonding assessment be performed prior to the dispositional hearing, with the State requesting that a bonding assessment with A.S.H.'s foster parent be performed as well.

¶8      The bonding assessment with M.P.H.-R. was done in April 2021. The therapist who performed the assessment concluded that "there is a secure attachment and bond between [M.P.H.-R.] and [A.S.H.]"  The bonding assessment with the foster parent, however, was not available at the time of the dispositional hearing held in June 2021.  M.P.H.-R. requested that the hearing be adjourned until that report was available, but the trial court refused, based on the length of time the case had been pending.  The court further noted that it was unclear how the absence of the bonding assessment with the foster parent impacted M.P.H.-R.'s case with regard to whether A.S.H. should be returned to her care, and the State agreed.

¶9      The trial court then heard testimony from M.P.H.-R.'s case manager. The case manager testified that other than the trial reunification period of approximately four months, A.S.H.—who was nine years old at the time of the dispositional hearing—had not been in her mother's care since she was fifteen months old.  She stated that A.S.H. had been diagnosed with ADHD, PTSD, and mood dysregulation disorder, and that the foster parent had followed through on all of A.S.H.'s treatment and care while she has been placed there.

¶10    The case manager also testified as to the findings of the bonding assessment.  Although she acknowledged that it indicated there was a "secure bond" between M.P.H.-R. and A.S.H., the case manager stated that was not the finding in a previous bonding assessment that was performed.  The case manager further testified that if the TPR petition was not granted, A.S.H. would likely remain in foster care.  She stated that even though M.P.H.-R. had made "substantial progress" in her parenting relationship with A.S.H. to the point where reunification was attempted, M.P.H.-R. had not significantly changed her behaviors since that reunification attempt failed, and thus had not demonstrated that she could take on the responsibility of caring for A.S.H.

¶11    A.S.H.'s foster parent, with whom A.S.H. had been placed with for the past seven years, also testified.  She stated that she and her husband—to whom she had been married for approximately five years—were committed to providing A.S.H. with a stable and permanent home through adoption.  She also indicated that she was open to allowing A.S.H. to remain in contact with her biological family.  Additionally, the case manager pointed out that the foster parent took A.S.H. back after the trial reunification with M.P.H.-R. was revoked.

¶12    Additionally, M.P.H.-R. testified on her own behalf.  She discussed the relationship A.S.H. has with M.P.H.-R.'s mother and siblings, as well as her son.  She conceded that she was not "stable" as a teenager when A.S.H. was born, but M.P.H.-R. asserted that she has "learned a lot" about parenting, and is not the same person she was as a teenager.

¶13    In rendering its decision, the trial court agreed that M.P.H.-R. had the "opportunity … to grow" in the seven years since A.S.H. had been removed

from her custody. However, the court noted that M.P.H.-R. and A.S.H. "did not grow together."

¶14     The trial court discussed the statutory factors for consideration of the best interests of A.S.H., pursuant to WIS. STAT. § 48.426, referencing a "grid" it had created for this matter with regard to those factors. This discussion included the acknowledgement of the bonding assessment with M.P.H.-R., stating that while A.S.H. has a substantial relationship with M.P.H.-R. and her family, A.S.H. also has a substantial relationship with her foster family, and that essentially, A.S.H. "has two families[.]"

¶15     The trial court also commented on the "significant amount of time" that A.S.H. had been in foster care, and found there to be "clear and convincing evidence" that A.S.H. would remain in foster care if the TPR petition was not granted. It thus concluded that A.S.H. "would be able to enter into a more stable and permanent family relationship" if the TPR petition was granted. Therefore, it found that granting the TPR petition was in the best interests of A.S.H. This appeal follows.

## DISCUSSION

¶16     "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. In making this determination, "the best interests of the child is the paramount consideration" for the trial court. *Id.*, ¶33. The trial court's decision should reference the factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402. We will uphold the trial court's decision to

6

terminate parental rights "if there is a proper exercise of discretion," that is, if the trial court applied the correct standard of law to the facts of the case. *See Margaret H.*, 234 Wis. 2d 606, ¶32.

¶17 Specifically, the best interest considerations that the trial court is required to consider are:

> **(a)** The likelihood of the child's adoption after termination.
>
> **(b)** The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> **(c)** Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> **(d)** The wishes of the child.
>
> **(e)** The duration of the separation of the parent from the child.
>
> **(f)** Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3). Our review of the record indicates that the trial court discussed all of these factors, and applied them to the facts in evidence, in rendering its decision.

¶18 Nevertheless, on appeal M.P.H.-R. argues that the trial court made "manifold errors" in its decision which resulted in the erroneous exercise of its discretion. However, these arguments seem to focus on how the court weighed certain evidence, without taking into consideration the remaining evidence or the full context of the court's decision.

¶19    For example, M.P.H.-R. asserts that the trial court relied on a "factually incorrect" understanding of the emotional attachment between M.P.H.-R. and A.S.H.  This is based on the court's statement acknowledging the bonding assessment but noting that "there wasn't that emotional attachment *last year*."  (Emphasis added.)  M.P.H.-R. focuses on the fact that there was another bonding assessment done in 2018 which also indicated a "secure attachment and bond" between M.P.H.-R. and A.S.H.  However, M.P.H.-R. does not take into consideration the evidence in the record regarding the failed trial reunification in 2019, and the evidence that M.P.H.-R.'s behaviors relating to the care of A.S.H. had not changed significantly since then.

¶20    M.P.H.-R. also relies on the bonding assessment in support of her argument that the trial court's conclusion that she and A.S.H. had not "grow[n] together" was unsupported by the evidence.  However, the record clearly shows that A.S.H. had not lived with M.P.H.-R. for most of her life—over seven years, since she was fifteen months old.

¶21    In a similar vein, M.P.H.-R. asserts that the trial court "facilitated the omission of … evidence" when it determined that the bonding assessment with the foster parent, which was unavailable at the time of the dispositional hearing, was not required for the matter to proceed.  The court's reasoning was evident—it stated that this case had been "going on too long," noting the age of the A.S.H. as it related to the time she had been in foster care.  The court further questioned the need for the bonding assessment for the foster parent for M.P.H.-R.'s case, since the statutory factor to which a bonding assessment is relevant requires consideration of the child's substantial relationship with *the parent*, not the foster parent.  *See* WIS. STAT. § 48.426(3)(c).  Additionally, the State—which had

requested the bonding assessment of the foster parent—agreed with the court that the matter should proceed without that assessment report.

¶22    Furthermore, the record contains other evidence regarding A.S.H.'s relationship with the foster parent, including that: A.S.H. had been placed with her for over seven years; the foster parent had followed through with all the treatment and care that A.S.H. requires for her mental health issues; the foster parent had taken A.S.H. back after the trial reunification with M.P.H.-R. failed; and the foster parent and her husband were committed to adopting A.S.H. These facts are also relevant for consideration of M.P.H.-R.'s argument that the trial court did not consider A.S.H.'s wishes. That statement is inaccurate; the court discussed this factor in terms of the fact that at A.S.H.'s age, her wishes correlate to her concept of family and security, which is up to the adults in her life to provide.

¶23    M.P.H.-R.'s other arguments tie into the trial court's comments regarding the potential for a "blended family." The foster parent indicated a willingness to maintain a relationship between M.P.H.-R. and A.S.H., and a proposal for a guardianship by the foster parent was suggested during the proceedings. Additionally, at the dispositional hearing, prior to rendering its decision, the trial court advanced a plan to split custody and placement of A.S.H. between M.P.H.-R. and the foster parent. This appears to be the basis for M.P.H.-R.'s arguments that the court "wrongly framed the ultimate decision as a choice between competing placements" and that the court "failed to appropriately assess the impact of legal severance" of M.P.H.-R.'s parental rights, since

maintaining a relationship between M.P.H.-R. and A.S.H. is not required upon termination.[3]

¶24    While we acknowledge M.P.H.-R.'s concerns regarding the trial court's proposal, the court's advancement of this suggestion does not negate the fact that it considered all of the required statutory factors when it subsequently rendered its decision.  Rather, M.P.H.-R.'s arguments generally express her wish that the trial court had given more weight to evidence she views as favorable to her, such as the bonding assessment, as opposed to other evidence that supported the termination of her parental rights, such as the length of time A.S.H. had been in foster care, the failure of the trial unification, the fact that A.S.H. would likely stay in foster care without termination, and the willingness of the foster parent and her husband to adopt A.S.H., giving her a permanent home.

¶25    However, the weight given to the evidence relating to the factors is within the discretion of the trial court.  *See State v. Margaret H.*, 234 Wis. 2d 606, ¶35.  The record indicates that as the trial court considered the required statutory factors, it weighed the evidence in this case in relation to those factors, and ultimately determined that the termination of M.P.H.-R.'s parental rights was in the best interest of A.S.H.  Therefore, the court properly exercised its discretion, *see id.*, ¶32, and, accordingly, we affirm its order terminating the parental rights of M.P.H.-R. to A.S.H.

---

[3] M.P.H.-R. also argues that the trial court relied on the wrong legal standard regarding the possibility of resolving this matter with a guardianship for A.S.H.  However, based on our decision, we do not reach that argument.  *See Cholvin v. DHS*, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 ("if a decision on one point disposes of the appeal, we will not decide the other issues raised").

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.