# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2022AP1580**
**2022AP1581**
**2022AP1582**
STATE OF WISCONSIN

Cir. Ct. Nos.  2020TP261
2020TP262
2020TP263

IN COURT OF APPEALS
DISTRICT I

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.T.-L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

C.L.,

RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.T.-L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

C.L.,

**RESPONDENT-APPELLANT.**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.T.-L., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

        PETITIONER-RESPONDENT,

  V.

C.L.,

        RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1 BRASH, C.J.[1] Chloe appeals the orders of the trial court terminating her parental rights to David, Josh, and Josie.[2] Chloe argues that the trial court erroneously exercised its discretion in determining that it was in the children's best interests to terminate Chloe's parental rights. Upon review, we affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading and to protect the confidentiality of these proceedings, we use pseudonyms to refer to the involved parties in this case.

BACKGROUND

¶2    Chloe is the biological mother of twins David and Josh, born in November 2014, and Josie, born in April 2018.  The children's father, Joseph, voluntarily consented to the termination of his parental rights.

¶3    The children were detained by the Division of Milwaukee Child Protective Services (DMCPS) in January 2019 upon receiving information that the children were at substantial risk of being physically abused.  Chloe's children were taken to the Child Advocacy Center for physical abuse examinations.  Both David and Josh, as well as one of Chloe's older children, were found to have healed looped cord injuries which are indicative of abuse.  David also had healed injuries on the back of his left arm and neck, which was "concerning for past abuse."

¶4    Chloe subsequently told case workers that the children's father, Joseph, had caused the twins' injuries in June 2018, and she had reported this to the police.  The case workers noted that Joseph had pending criminal charges against him for child abuse—intentionally causing harm; battery; domestic abuse; and intimidation of a witness by a person charged with a felony.  These charges were from an incident that occurred in April 2017, and there was a no-contact order in effect for Chloe and her children.  Further research uncovered a history of domestic abuse of Chloe by Joseph dating back to 2014.

¶5    David, Josh, and Josie were removed from Chloe's care and placed with their paternal grandparents.[3]  The trial court found the children to be in need

---

[3]  Joseph was incarcerated at the time the children were removed from Chloe's care.

of protection or services (CHIPS), and corresponding dispositional orders were entered listing a number of conditions that had to be met before the children could be returned to Chloe's care. Those conditions included not allowing violence in the home, providing a safe living environment, and requiring Chloe to gain control of her mental health and her emotions. Regular visitation with the children was also required.

¶6 Chloe failed to meet these conditions. For example, she was referred to a therapist for her mental health issues, but only attended one appointment. Furthermore, she was inconsistent with her visits with the children, and it was observed that when she did visit them, she was "unable to manage all of her children's behaviors, struggle[d] with boundaries and ha[d] inappropriate conversations with them," such as "encouraging them to run away and go to her home." The condition relating to providing a safe living environment was also of concern because she had violated the no-contact order with Joseph. Additionally, Chloe tested positive at one point for ecstasy and methamphetamines.

¶7 Therefore, Petitions for the Termination of Parental Rights (TPR) were filed in November 2020. In the petitions, the State's alleged grounds for termination included the continuing need for protection or services for the children, pursuant to WIS. STAT. § 48.415(2), and Chloe's failure to assume parental responsibility, pursuant to § 48.415(6). Chloe entered a no contest plea to the continuing CHIPS ground in February 2022, and the matter proceeded to disposition.

¶8 At the dispositional hearing held in June 2022, the State called the case manager for the family to testify. The case manager explained that the children had remained with their paternal grandparents since they were removed

from Chloe's care, that they were committed to adopting them, and that the children each had a strong bond with them. The case manager also described each child's mental health and behavioral issues, which were being treated through therapy with the involvement of the grandparents. The case manager noted that Chloe had not been involved at all with their treatments. In fact, other than two short telephone visits just prior to the hearing, the case manager stated that Chloe had not had contact with the children since 2019.

¶9 The case manager further testified that Joseph had been released from custody around January 2022. The case manager stated that Joseph did have supervised contact with the children for short periods of time, but that the grandparents were aligned with DMCPS in ensuring that the children were kept safe. The case manager indicated that she had no safety concerns relating to this arrangement; she said she had discussed this issue at length with the grandparents, and they were extremely committed to keeping the children safe, even given the fact that Joseph is their son.

¶10 The case manager also testified that although the children were too young to indicate their preferences on where they wanted to live, they "never brought up their mom or their dad" in conversations she had with them. Furthermore, although Chloe indicated that she would support a guardianship by the grandparents as an alternative to the termination of her parental rights, the case manager stated that a guardianship was not considered because it would not be appropriate to "leave the door open" when the grandparents could provide stability and permanency for the children upon adoption.

¶11 Chloe also testified. She stated that she had been addicted to Oxycodone, but had gotten "clean." She also said she had a prescription for

Adderall, which she asserted contained methamphetamine. Chloe further testified that she had never physically abused the children, and that when Joseph had abused them, she called the police and cooperated in his prosecution. Chloe stated that she feared for the children's safety from Joseph while they living with their grandparents—Joseph's parents. She also expressed concern that the children would become abusive when they grew up if they were raised by their grandparents, since they were the people who had raised Joseph. Additionally, she explained that her lack of visitation with the children was due to being busy with work as a caretaker for the elderly.

¶12 At the end of the hearing, the trial court discussed the statutory factors for determining the best interests of the children. The court found that they "weigh[ed] heavily in favor of termination," noting in particular Chloe's lack of engagement and visitation with the children. The court acknowledged that Chloe had been a victim of abuse by Joseph, but suggested that his being incarcerated had presented "the perfect opportunity" to engage in the services offered by DMCPS and work toward reunification with the children without the fear of further abuse, and Chloe had failed to take advantage of that opportunity. The court also rejected Chloe's request for a guardianship by the grandparents as opposed to termination, observing that her concerns about the safety of the children living with their grandparents would not be addressed by a guardianship.

¶13 The trial court therefore found that it was in the best interests of the children to terminate Chloe's parental rights. This appeal follows.

**DISCUSSION**

¶14 On appeal, Chloe asserts that the trial court erroneously exercised its discretion in finding that terminating her parental rights was in the best interests of the children. "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." ***State v. Margaret H.***, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. We will uphold the decision if the trial court applied the correct standard of law to the facts of the case. *See id.*, ¶32.

¶15 In making the determination to terminate parental rights, "the best interests of the child is the paramount consideration" for the trial court. ***Id.***, ¶33. The trial court's decision should reference the statutory factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition. ***Sheboygan Cnty. DHHS v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402.

¶16 The statutory factors that the trial court is required to consider are:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶17 The record indicates that the trial court referenced all of these factors with regard to the children in its decision, and found that the evidence relating to each factor weighed in favor of the termination of Chloe's parental rights. Indeed, Chloe's argument on appeal is not that the court did not consider the statutory factors, but rather that it should have weighed the evidence more favorably toward not terminating her parental rights, considering that the children will likely be adopted by their grandparents—the parents of Joseph, who was convicted of physically abusing them.

¶18 Specifically, Chloe argues that a guardianship would offset this potential harm in that it would allow Chloe to have visitation rights so that she would be aware if Joseph had unsupervised visits with the children, and have standing to intervene. However, as noted above, the trial court acknowledged this issue in its decision, observing that a guardianship by the grandparents would not resolve any safety concerns for the children as they relate to Joseph. Furthermore, for Chloe to base this argument on the premise of being allowed visitation during a guardianship is somewhat disingenuous, in that she was ordered to have regular visits with the children while the CHIPS order was in effect and failed to do so.

¶19 The trial court recognized—and even her own trial counsel admitted—that Chloe had not been "particularly cooperative" throughout the case. In fact, the trial court observed that Chloe did not want the children living with their paternal grandparents at all, noting that the evidence indicated that the grandparents were willing to engage with Chloe, but she was not willing to engage with them.

8

¶20 In short, the trial court found that although there was a concern about Joseph being allowed to have contact with the children, the statutory factors relating to the best interests of the children weighed heavily in favor of the termination of Chloe's parental rights. Specifically, the court found that the grandparents were an adoptive resource for the children; that they were supportive of the children's healthcare and special needs; that the children had been removed from Chloe's home for a "significant" amount of time—over three years—given their ages; that, as a result, the children did not have substantial relationships with Chloe, and it therefore would not be harmful to the children to legally sever that relationship, also noting that the grandparents had indicated that they were amenable to Chloe having a relationship with the children. Additionally, the court found that the grandparents would provide a more stable and permanent home for the children than Chloe, who had failed to demonstrate that she could provide a safe home for the children. The record supports these findings.

¶21 Therefore, the court applied the correct standard of law to the facts and circumstances of this case. *See **Margaret H.***, 234 Wis. 2d 606, ¶32. Accordingly, we affirm its orders terminating Chloe's parental rights to David, Josh, and Josie.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9