# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP160**

Cir. Ct. No. 2019TP205

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF D.O., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

   V.

S.J.,

      RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM, Judge. *Affirmed.*

¶1    DUGAN, J.[1]  Sharon appeals from an order of the circuit court terminating her parental rights to her daughter, Danielle.[2]  On appeal, Sharon argues that the circuit court failed to "sufficiently consider" whether the relationship she had with her daughter would cause her daughter harm once Sharon's parental rights were terminated and the relationship severed.  This court concludes that the circuit court properly exercised its discretion and appropriately considered the relationship between Sharon and her daughter and any consequences of severing that relationship.  Accordingly, for the reasons set forth below, this court affirms.

## BACKGROUND

¶2    The State filed a petition to terminate Sharon's parental rights to her daughter on October 17, 2019.[3]  The petition alleged that Sharon failed to assume parental responsibility and that Danielle was a child in continuing need of protection or services.  The petition described that Sharon had a history of "impulsive" and "out of control" behavior that led to multiple criminal charges and left Danielle with relatives for long periods of time without basic necessities or clean clothes.  The petition also described that Sharon had a history of being homeless and unemployed.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For ease of reference, we use pseudonyms to refer to the individuals involved in these confidential proceedings.

[3]  The State also petitioned to terminate the rights of Danielle's father.  The father's rights are not at issue in this appeal.

¶3      Sharon entered a plea of no contest and was consequently found to be an unfit parent. The circuit court continued to the dispositional hearing and took testimony from Danielle's paternal aunt, Danielle's case supervisor, and Sharon.

¶4      Danielle's aunt and the case supervisor testified that Danielle had been living outside of the parental home since 2017 when Danielle was approximately four years old and that Danielle had been living with her aunt since 2019. Both Danielle's aunt and the case supervisor testified that Danielle's health and well being had improved since she was removed from Sharon's care and, in particular, when Danielle began living with her aunt. Danielle's aunt testified that Danielle has a bond with her, called her "TT,"[4] and knows her as her aunt. She further testified that Danielle knew Sharon was her mother, and the case supervisor also testified that Danielle, who was now eight years old, was aware of who her parents were. Danielle's aunt and the case supervisor further described that Danielle continued to have phone contact with Sharon, but described that Danielle was emotional after contact with her mother. Both also testified that Danielle looked to her aunt, not Sharon, for daily care and security, and testified that Danielle had grown to feel that her placement with her aunt was her home.

¶5      When Sharon testified, she described that she kept in contact with Danielle and that they had a relationship with one another. Sharon testified to drawings and other items that she had exchanged with Danielle since her incarceration and explained that they have a good relationship.

---

[4] Danielle's aunt testified that "TT" refers to aunty.

¶6 At the end of the hearing, the circuit court recognized that this was "a really hard case" and weighed the factors found in WIS. STAT. § 48.426(3). Ultimately, the circuit court found that it was in Danielle's best interests to terminate Sharon's parental rights. Sharon now appeals.

## DISCUSSION

¶7 "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first phase, called the "grounds" phase, "the petitioner must prove by clear and convincing evidence" that at least one of the twelve grounds enumerated in WIS. STAT. § 48.415 exists. *Steven V.*, 271 Wis. 2d 1, ¶¶24-25; *see also* WIS. STAT. § 48.31(1). In the second phase, often referred to as the "dispositional phase," the court must decide if it is in the child's best interest that "the parent's rights be permanently extinguished." *Steven V.*, 271 Wis. 2d 1, ¶¶26-27; *see also* WIS. STAT. § 48.426(2). Sharon's appeal requires this court to review the second phase of the proceedings.

¶8 "At the dispositional hearing, the court must consider any agency report submitted and the six factors enumerated in [WIS. STAT.] § 48.426(3) in determining the best interests of the child." *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶4, 255 Wis. 2d 170, 648 N.W.2d 402. "The court may also consider other factors, including factors favorable to the parent; but all factors relied upon must be calibrated to the prevailing standard: the best interests of the child." *Id.* The factors listed under § 48.426(3) are:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

4

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

¶9      This court will uphold the circuit court's decision to terminate parental rights "if there is a proper exercise of discretion." *State v. Margaret H.*, 2000 WI 42, ¶32, 234 Wis. 2d 606, 610 N.W.2d 475. "A proper exercise of discretion requires the circuit court to apply the correct standard of law to the facts at hand." *Id.* As noted, in making its determination, "the best interests of the child is the paramount consideration" for the circuit court. *Id.*, ¶33.

¶10      Sharon concedes that the circuit court properly considered all the factors of WIS. STAT. § 48.426(3) with the exception of the third factor, namely whether Danielle had a substantial relationship with Sharon and whether it would be harmful to Danielle to sever that relationship. This court concludes that the circuit court appropriately exercised its discretion in finding that it was in Danielle's best interests to terminate Sharon's parental rights.

¶11      After taking testimony at the hearing, the circuit court summarized the testimony stating that Danielle's aunt had put Danielle's needs first when her own mother had not. The circuit court continued summarizing the testimony finding that

what it tells me is that these parents do not put [Danielle's] interests first, but the people in the room who put her interests first are the two women sitting in the jury box.

And I get it …. You know that you want to fight for your daughter, but, you know, to have phone calls with her at this late juncture saying I'm taking you back, it just doesn't show any sensitivity to what you guys have put this little girl through.

….

But [Sharon's] life was super chaotic. In and out of custody. Leaving [Danielle] with various relatives. Leaving her in a condition where she's obviously not being cared for well.

….

If she's [the aunt's] daughter, the aunt is going to be sure she goes to college. She's going to be a role model for her and a support her.

What does she have, you know, with the parents? I mean, I'm not trying to be cruel, but really like your lives are chaotic. You don't offer her that. You don't offer her a vision of who she can really be.

¶12 As a complete review of the record demonstrates, the circuit court thoroughly and extensively considered the testimony as it related to each of the factors and found that it was in Danielle's best interests to terminate Sharon's parental rights. *See David S. v. Laura S.*, 179 Wis. 2d 114, 149, 507 N.W.2d 94 (1993) ("[T]he best interests of the child is the polestar of all determinations under ch. 48."). As the circuit court stated, terminating Sharon's rights would "empower [Danielle] to have the most stability and security she can have."

¶13 Specifically as to the relationship between Sharon and Danielle, the circuit court stated that it could not gauge whether there was a substantial relationship between them but it could see that Sharon's role in Danielle's life was of an "in and out nature." Indeed, Danielle had been separated from her mother

"for a full half of her life," and "[t]here was a fair amount of separation prior to that with incarceration and not properly caring for her before that."

¶14    However, the circuit court also found that "not a whole lot [was] going to change in this family constellation" and "[Sharon] is still going to [be] her mom, and [Danielle's aunt] will legally become her mom, but she's still really her TT."  In other words, termination of Sharon's parental rights would make Danielle's aunt legally responsible for Danielle and make Danielle's aunt the daily caretaker and provider, but Danielle would continue to know Sharon as her mother and continue to have some form of contact with her biological parents.  The circuit court also recognized that Danielle has "strongly expressed" her desire to remain with her aunt.

¶15    Consequently, the circuit court found that Danielle overall had a healthy and stable relationship with her aunt, with whom Danielle had lived since 2019, and it was in Danielle's best interests to allow her aunt to adopt Danielle in order to preserve what Danielle had with her aunt and remove the chaos and instability Danielle experienced with Sharon.  As the circuit court stated, "[Danielle] doesn't need to shoulder this mess. … She can continue to see her family as she sees and knows her family."  However, by terminating Sharon's rights, "[Danielle] will know she is never leaving [her aunt's] home.  She will always be a member of her family, and no one gets to play tug of war with her, and no one gets to emotionally manipulate her[.]"

¶16    In short, the record when viewed as a whole, demonstrates that the circuit court properly exercised its discretion, appropriately considered the relationship between Sharon and Danielle, and weighed that relationship with the other factors to determine what was in Danielle's best interests—the polestar of

the proceedings. Before explicitly discussing the factors, the circuit court provided a summary of the testimony in which it recognized that Danielle had found stability and security with her aunt, and it was in Danielle's best interests to terminate Sharon's parental rights in order that Danielle may be able to continue that stability and security. The circuit court stated, "[W]hen you look at the balance of the factors in total and in particular when you look at the fact that this family constellation really isn't going to be changed on a functional level I think that overall they mitigate in favor of termination." Thus, this court concludes that the circuit court properly exercised its discretion.

¶17 Indeed, Sharon conceded that the circuit court appropriately considered all but one of the factors of WIS. STAT. § 48.426(3), and in making this argument, Sharon isolates one factor from the rest in arguing that the circuit court erroneously exercised its discretion. This court declines to isolate one factor when it is the evaluation of all the factors together that are to be used in determining the best interests of the child at this phase of the proceedings. *See Margaret H.*, 234 Wis. 2d 606, ¶36. Moreover, it is for the circuit court to determine the relative weight to be assigned to each factor and "exclusive focus on any one factor is inconsistent with the plain language of WIS. STAT. § 48.426(3)." *See id.*, ¶¶29, 35 ("[W]e cannot mandate the relative weight to be placed on this factor."). Because the circuit court thoroughly considered all the factors together, this court affirms the circuit court's order to terminate Sharon's parental rights.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.