COURT OF APPEALS
DECISION
DATED AND FILED

February 23, 2023

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1815**

Cir. Ct. No. 2021TP20

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T.A.P.,
A PERSON UNDER THE AGE OF 18:

WOOD COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

P. M. P.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Wood County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed*.

¶1    GRAHAM, J.[1]  P.M.P. appeals an order terminating her parental rights to her daughter.  P.M.P. argues that the circuit court erroneously exercised its discretion at the dispositional phase because it did not adequately consider each of the factors set forth in WIS. STAT. § 48.426(3)(a)-(f).  I disagree and affirm the circuit court's order.

## BACKGROUND

¶2    The Wood County Department of Human Services filed a petition to terminate P.M.P.'s parental rights to her daughter, T.A.P.[2]  At the time the petition was filed, T.A.P. was four years old, and she had been placed outside of P.M.P.'s home since she was approximately 20 months old.  The County alleged continuing need of protection or services and failure to assume parental responsibility as grounds for termination.  *See* WIS. STAT. § 48.415(2); (6).

¶3    P.M.P. denied the allegations in the petition and requested a jury trial.  The jury returned verdicts in favor of the County on both grounds and the case proceeded to disposition.

¶4    At the dispositional hearing, the court heard testimony from T.A.P.'s foster mother, as well as from the social worker who worked for the County and had been responsible for the child in need of protection or services case involving T.A.P.  P.M.P. did not testify at the dispositional hearing.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

[2]  The County also sought to terminate T.A.P.'s father's parental rights.  T.A.P.'s father did not appeal the circuit court order terminating his parental rights, and I discuss his case no further.

¶5    T.A.P.'s foster mother testified about the state of T.A.P.'s health at the time T.A.P. was placed in her care. The foster mother indicated that T.A.P. was small and anemic, that her "hair was falling out," and that she would eat things "that weren't food." When asked whether P.M.P. ever contacted her with any concerns about T.A.P.'s health, the foster mother indicated that T.A.P. had a high fever and had to see a doctor a couple weeks before the trial. The foster mother emailed P.M.P. about the appointment, but P.M.P. "didn't reply to the email" and "didn't ask how [T.A.P.] was" or "how the appointment went." When asked about T.A.P.'s level of interest in online visits with P.M.P., the foster mother testified that T.A.P. "was pretty inattentive, frequently leaving the table or leaving the iPad or just not really engaged," and that T.A.P. had expressed that "she did not want to do the visits" with P.M.P.

¶6    The social worker testified that P.M.P. had had consistent weekly visits with T.A.P. However, in the County's opinion, P.M.P. and T.A.P. did not have a substantial relationship, and it would not be harmful to sever their relationship. When asked whether any of P.M.P.'s extended family ever tried to establish a relationship with T.A.P., the social worker testified that "there has not been any extended familial relationships" with T.A.P. other than her grandmother's participation in several of P.M.P's supervised visits with T.A.P. When asked whether T.A.P. had expressed any interest in continuing the relationship, the social worker testified that "those conversations ha[d] been limited" due to T.A.P.'s "age and developmental level," but that T.A.P. "ha[d] expressed that she does not want to go to visitation with [P.M.P.]" The social worker testified that, if P.M.P.'s parental rights were terminated, adoption would be likely, and that termination would "allow for a more stable and permanent living arrangement" for T.A.P.

3

¶7    WISCONSIN STAT. § 48.426(2) provides that, when determining the disposition of termination of parental rights proceedings, the "best interests of the child shall be the prevailing factor considered by the [circuit] court." In determining what is in the best interests of the child, § 48.426(3) directs the court to "consider but not be limited to the following:"

> (a)  The likelihood of the child's adoption after termination.
>
> (b)  The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c)  Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d)  The wishes of the child.
>
> (e)  The duration of the separation of the parent from the child.
>
> (f)  Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

¶8    In this case, the court issued an oral ruling finding that it was in the best interests of the child to terminate P.M.P.'s parental rights. The court then went through the six factors identified in WIS. STAT. § 48.426(3)(a)-(f) and made the following findings, expressly referencing each of the factors.

¶9    Specifically, the circuit court found that "the likelihood of adoption after termination is very high." *See* WIS. STAT. § 48.426(3)(a).

¶10   Regarding T.A.P.'s health, the circuit court found that "her health is good now, but there were a number of problems in that home … that could at least cause a person great difficulty." *See* WIS. STAT. § 48.426(3)(b).

4

¶11     As for whether it would be harmful to sever the parental and familial relationships, the circuit court found that "[t]here has been no evidence of that at all." It further stated that, although P.M.P. had visited with T.A.P. 100 times over the course of three years and that is "a lot of visits," "[a] substantial relationship goes beyond that." The court stated that "one of the things that … indicates [a] substantial relationship is the child's reaching out, … the child's comfort level, … who does the child go to when they're not feeling well, when they're in trouble[.]" Given the evidence about T.A.P.'s comfort level, the court found that "100 visits in and of themselves don't make the kind of substantial relationship that this Court worries about … severing." *See* WIS. STAT. § 48.426(3)(c).

¶12     As for T.A.P.'s wishes, the circuit court indicated that "[t]he wishes of the child are not material to this Court." *See* WIS. STAT. § 48.426(3)(d).

¶13     Regarding the duration of the separation of the parent from the child, the circuit court indicated that "[s]eparation of the parent/child is a significant factor no matter what the reasons are." *See* WIS. STAT. § 48.426(3)(e).

¶14     Finally, regarding whether T.A.P. will be able to enter into a more stable and permanent family relationship as a result of the termination, the circuit court found that "the child will clearly be able to enter into a more stable and permanent family relationship as a result of this termination, taking into account the current placement." *See* WIS. STAT. § 48.426(3)(f).

## DISCUSSION

¶15     Involuntary termination of parental rights proceedings involve two separate phases:  the grounds phase (sometimes referred to as the "fact-finding" phase) and the dispositional phase. ***Steven V. v. Kelley H.***, 2004 WI 47, ¶¶24-27,

271 Wis. 2d 1, 678 N.W.2d 856. Once grounds for termination of parental rights are established, it is within a circuit court's discretion to determine the disposition, which is based on whether termination of parental rights is in the child's best interests. *Id.*, ¶27; *see also* **State v. Margaret H.**, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475.

¶16     On appeal, P.M.P. argues that the circuit court erroneously exercised its discretion in the dispositional phase because the record does not reflect that the court adequately considered or weighed the factors set forth in WIS. STAT. § 48.426(3)(a)-(f). P.M.P. acknowledges that the circuit court's discussion of whether there was a substantial relationship between P.M.P. and T.A.P. was adequate. However, she argues that the court's consideration of the other factors was "terse and abbreviated," and that the court "failed to state on the record the relevant facts pertaining to such factor[s.]"

¶17     P.M.P. cites **Minguey v. Brookens**, 100 Wis. 2d 681, 303 N.W.2d 581 (1981) and **Margaret H.**, 234 Wis. 2d 606, for the proposition that the circuit court was required to do more to properly exercise its discretion, but neither of those cases support P.M.P.'s argument.

¶18     In **Minguey**, the circuit court's exercise of discretion in the dispositional phase was inadequate because it did not make a finding that termination was in the best interests of the child. **Minguey**, 100 Wis. 2d at 687.[3]

---

[3] The **Minguey** court also faulted the circuit court in that case for failing to resolve factual disputes relevant to the grounds phase of the proceedings. **Minguey v. Brookens**, 100 Wis. 2d 681, 687, 303 N.W.2d 581 (1981) ("the trial court findings regarding the grounds for termination … are inadequate"). Here, P.M.P.'s challenge is to the court's exercise of discretion during the dispositional phase of the proceedings, and the facts introduced during that phase were largely undisputed. Accordingly, this holding from **Minguey** is not pertinent to my analysis.

¶19     In ***Margaret H.***, the circuit court's disposition was based on just one factor—the harm that would be caused by severing the child's legal relationship with his biological grandmother. ***Margaret H.***, 234 Wis. 2d 606, ¶35. Indeed, the court considered this factor to the exclusion of any of the other statutory factors. ***Id.*** On review, our supreme court remanded the matter for further consideration because an "exclusive focus on any one factor is inconsistent with the plain language of WIS. STAT. § 48.426(3)," ***id.***, and "the circuit court failed to consider all of the relevant statutory factors enumerated under § 48.426(3)," ***id.***, ¶31.

¶20     This case is entirely unlike ***Minguey*** or ***Margaret H.*** Here, the court expressly "alluded to" all six factors,[4] and determined that, based on its assessment of those factors, termination was in T.A.P.'s best interests. Although the circuit court could have said more, I have no basis for concluding that the court's exercise of discretion was inadequate.

¶21     Separately, P.M.P. also argues that the court erred by wholly failing to consider the wishes of the child. This argument fails for two reasons.

¶22     First, although the court's discussion of this factor was admittedly terse, it appears that the court was acknowledging the reality that T.A.P. had not expressed concrete wishes about whether P.M.P.'s parental rights should be terminated. To that end, the court was simply expressing its agreement with the County's attorney that, "given [T.A.P.'s] age, her wishes aren't necessarily what's going to be the driving factor here." Under the circumstances, I view the circuit

---

[4] *See **Pierce Cnty. DHS v. Troy H.***, Nos. 2012AP2525 and 2112AP2526, unpublished slip op. ¶9 (WI App Feb. 19, 2013) (quoting ***Sheboygan Cnty. DHHS v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402).

I cite this authored, unpublished, one-judge opinion for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

court's statement as a fair assessment of the limited amount, and value, of the evidence relevant to that factor, rather than an unwillingness or refusal to consider any wishes that T.A.P. might have expressed.

¶23 Second, had the court expressly considered T.A.P.'s wishes, the only evidence on that factor admitted during the dispositional hearing was that T.A.P. had expressed little interest in continuing visits with P.M.P. Accordingly, to the extent that the court gave the limited evidence on this factor additional weight, it would support termination.

¶24 Accordingly, for the reasons explained above, I affirm.

*By the Court.—*Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.