COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP732**

Cir. Ct. No. 2022TP198

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T. H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

M. H.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed*.

¶1     WHITE, J.[1]  M.H. appeals the order terminating her parental rights to her son, T.H.  She first argues that the circuit court erred when it entered default judgment against her on the grounds for the termination of parental rights (TPR) petition because there was no proof she had notice of the petition.  Second, she argues that the circuit court failed to analyze on the record all required statutory factors in the dispositional phase of the TPR.  We reject both arguments and accordingly, we affirm.

## BACKGROUND

¶2     T.H., born in August 2016, had been detained by the Division of Milwaukee Child Protective Services (DMCPS) in May 2018, after a report that T.H. and his older sister, then ages one and two, were observed walking around in dirty, wet clothing in heavy rain on Milwaukee's north side.  M.H. was arrested for child neglect.  T.H. had been in out-of-home care since he was detained

¶3     The State filed the underlying petition for TPR of T.H. against M.H. in November 2022.  The State alleged three grounds in support of the TPR.  First, abandonment because M.H. abandoned T.H., arising out of M.H. having "no visits, communication, or contact including written, phone and electronic contact" with T.H. from at least February 2022 through October 2022.  Second, T.H. continues to be a child in need of protection of services (CHIPS) because M.H. has not satisfied the conditions and goals established in the CHIPS dispositional order to return T.H. to her care.  Third, M.H. has failed to assume parental responsibility for T.H.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      At a hearing on the TPR petition in December 2022, M.H. did not appear. The court reviewed that the State filed affidavits of non-service and also proof of service by publication of the TPR petition for M.H. and T.H.'s purported father, J.J. Upon the State's motion, the court found that M.H. and J.J., or any unknown father, were in default for failure to join in the matter, subject to the State proving the allegations in the petition.

¶5      The TPR proceedings continued in January 2023; M.H. was not in attendance. The State began with the testimony of T.H.'s case manager, whose testimony provided the basis for the State to prove the grounds alleged in the TPR petition. The case manager testified that T.H. had been in his current foster placement since December 2021 after being in three previous placements after he was detained in 2018. He testified that M.H. had not "stepped up to accept the daily responsibility for the supervision, education, protection or financial support of the child." M.H. spends no time with T.H. and does not have a current visitation schedule.

¶6      The case manager testified that he had contact with M.H. about four times and that she had reached out to him after the last court date. M.H. has not paid any child support for T.H. She has not complied with the conditions of return in the CHIPS dispositional order including that she had not resolved the child neglect charge issued in 2018 regarding T.H.; she has not engaged in services to help with her extensive mental health problems; and she has not supervised T.H. and placed his needs above her own. M.H. had no contact with T.H. from February through October 2022.

¶7      The State asked the court to "take judicial notice of the juvenile court record, the placement order, the CHIPS petition and the CHIPS dispositional

order" in this case, which the court agreed to do. The court stated that it reviewed the official circuit court file, the CHIPS case documents, the TPR petition, and the case manager's testimony. The court found that the State had proven the grounds alleged in the TPR petition against M.H.: abandonment, continuing CHIPS, and failure to assume parental responsibility, and consequently, found M.H. to be an unfit parent.[2]

¶8      The court moved to the dispositional phase of the TPR petition. The case manager testified about T.H.'s health and family connections. The case manager had only been working with T.H. for about two months, but he relied upon a report prepared by his agency. From his review of the case file and meeting with T.H., who is now age seven, and his foster father, the case manager testified that the foster father was interested in adopting T.H. and T.H. was happy living in this placement. T.H. did not have contact with his mother or father, he had not lived with his mother since he was detained, there was not a visitation schedule, and the case manager did not believe that T.H. asked about his parents. T.H. did not have a substantial bond with his older sister or any extended family members; M.H.'s parental rights to his older sister had been terminated in 2021. He did not believe that T.H. would be harmed if the legal relationships with his parents is severed and that T.H. would be able to enter into a more stable and permanent family relationship if the TPR were granted.

---

[2] The court also found that the State had proven the ground alleged that J.J. or any other unknown father of T.H. had failed to assume parental responsibility. T.H.'s paternal parental rights were later terminated as well. Any issues concerning T.H.'s unknown father are not subject to this appeal and we address them no further.

¶9 The State called a treatment social worker from Children's Wisconsin who placed T.H. with his current foster placement; she has worked with T.H. for about five months. T.H. was moved to a treatment foster care placement, which offers a higher level of care, because he had struggled in his earlier placements. As she described it, T.H. had "[l]ots of fighting, lots of bed wetting, lots of needing constant redirection. There was a lot of school issues that was going on and a lot of sleep issues as well." She believed those behaviors had lessened while in his current placement.

¶10 The court considered the facts and circumstances of T.H.'s case and the required statutory factors in WIS. STAT. § 48.426(3):

> [T]he [c]ourt finds there is a strong likelihood of adoption if the termination of parental rights petition is granted. There is nothing about the age or health of the child at this time that would be a barrier to him being adopted. He is adoptable and there is an adoptive resource for him. The child was removed from the home and in out of home care for four years and he has had several other placements before settling in with [his foster father] in 12 of 2021. The child does not have a substantial relationship with either the mother or any unknown fathers. The child does not have a substantial relationship with any other family members either on the paternal or maternal side of the family and I find it would not be harmful to sever the legal relationship that [T.H.] has with his parents or any other family members. The child wishes to stay in the home of [his foster father] and according to … the TPR report from January 6th of 2023, he refers to [his foster father] as father. Again, he has been separated from his parents for the past four years and clearly the child will be able to enter into a more stable and permanent family relationship as a result of the termination taking into account the number of years that he has been out of the parental home, the fact that the parents have not stepped up to the plate to take on the responsibility for caring for [T.H.] or meeting the conditions for the safe return of the child to their home. and if I don't grant the termination of parental rights, it is most likely that [T.H.] will languish in foster care and that would not be in his best interests.

The court concluded that "it would be in the best interest of the child to terminate his parents' rights." The court entered the order the following day.

¶11     This appeal follows.

## DISCUSSION

¶12     M.H. makes two arguments why the circuit court erroneously exercised its discretion when it terminated her parental rights to her son. First, she contends that the court erroneously entered a default judgment on the grounds for the TPR when it concluded that the State's notice by publication had accomplished service and provided adequate notice. Second, M.H. asserts that the circuit court had insufficient evidence in the record to support its dispositional decision. We address and reject each argument in turn.

¶13     The decision to terminate parental rights is within the discretion of the circuit court. *See Gerald O. v. Susan R.,* 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). Moreover, the decision to grant or deny a motion for default judgment requires an exercise of sound discretion. *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.*, 2002 WI 66, ¶63, 253 Wis. 2d 238, 646 N.W.2d 19. We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach. *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶14     An involuntary TPR is governed by the Wisconsin Children's Code, WIS. STAT. ch. 48. The first stage is whether the grounds for the TPR exist,

typically determined in a fact-finding hearing pursuant to WIS. STAT. § 48.424. The State has the burden to show that grounds for termination exist by clear and convincing evidence. ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶22, 246 Wis. 2d 1, 629 N.W.2d 768. However, a circuit court may grant a default judgment on the grounds phase if no issue of law or fact has been joined and the time for joining issue has expired. WIS. STAT. § 806.02(1). Even if a default is granted, the court "shall hear testimony in support of the allegations in the petition," and the State is required to "prove up" the grounds for the TPR. *See* WIS. STAT. § 48.422(3).

¶15      The second stage is the dispositional phase, in which the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child. ***Evelyn C.R.***, 246 Wis. 2d 1, ¶23. To determine whether termination is in the child's best interests, the circuit court must consider six statutory factors on the record. WIS. STAT. § 48.426.[3] *See* ***State v. Margaret H.***, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

---

[3] In determining the disposition of a TPR petition, the circuit court must consider, but is not limited to, the following six factors:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(continued)

¶16 We now turn to M.H.'s first argument. M.H. argues that the default judgment was inappropriate because the publication of the summons did not ensure she had notice of the TPR proceedings. "Whether service of a summons is sufficient to obtain personal jurisdiction over a defendant involves the interpretation and application of a statute to undisputed facts and is reviewed as a question of law." *Useni v. Boudron*, 2003 WI App 98, ¶8, 264 Wis. 2d 783, 662 N.W.2d 672. WISCONSIN STAT. § 801.11(1) provides that service of a natural person may be accomplished by "personally serving the summons." If personal service cannot be accomplished with "reasonable diligence," then substitute service can be made by leaving a copy with a competent adult in the person's usual place of abode, or if that fails, by "publication of the summons as a class 3 notice, under ch. 985, and by mailing." Sec. 801.11(1)(b)-(c). Chapter 985 discusses the qualifications of a newspaper for legal notices and provides that the notice "shall be published in a newspaper likely to give notice in the area or to the person affected." WIS. STAT. § 985.02.

¶17 The record reflects that the State attempted personal service on M.H. three times, each at the address where she had been known to live by DMCPS. When the third attempt was unsuccessful, the State published the summons in the Daily Reporter, a newspaper allowed to print legal notices for residents in Milwaukee County. M.H. asserts that there is no proof that she lived in

---

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

Milwaukee at the time the petition was filed and served; therefore, the publication of the summons in a Chapter 985-qualified newspaper for Milwaukee cannot be said to have notified her of the proceedings.

¶18    MH's argument relies on *PHH Mortg. Corp. v. Mattfeld*, 2011 WI App 62, ¶11, 333 Wis. 2d 129, 799 N.W.2d 455 (Ct. App. 2011), where this court concluded that the plaintiff mortgage holder failed to comply with WIS. STAT. ch. 985 when it published the summons to effectuate service after personal service was not accomplished. *Id.*, ¶9. In that case, the mortgage company published the summons in the Daily Reporter, which was shown to be a "qualified legal newspaper in Milwaukee County," but it was "not a qualified legal newspaper in Waukesha County," where the property under foreclosure was located. *Id.*, ¶10. The circuit court then determined that without effective service by publication, the court did not have jurisdiction when it entered a default judgment against the homeowners. *Id.*, ¶12.

¶19    MH's argument fails because the State published the summons notice in the "newspaper likely to give notice" to M.H. based on her last known address. *See* WIS. STAT. § 985.02. Her reliance on *Mattfeld* is misplaced because in that case, the property in foreclosure was at a known address in Waukesha County, and the mortgage holder attempted service by publication using a newspaper "not qualified" in Waukesha County. *Id.*, 333 Wis. 2d 129, ¶11. Here, M.H. offers the conclusory statement that it was not proven she lived in Milwaukee County at the time of the service by publication. However, she fails to assert that more diligent efforts could have yielded another address for personal service and as the State notes, her notice of intent for postdispositional relief listed a City of Milwaukee address. M.H.'s argument about lack of proof that she had notice because of the State's choice to publish the summons in a qualified

newspaper for Milwaukee County is undeveloped.[4] We decline to develop it for her. *See Dane Cnty. DHS v. J.R.*, 2020 WI App 5, ¶22, 390 Wis. 2d 326, 938 N.W.2d 614 (explaining that this court does not address insufficiently developed arguments). We conclude that circuit court's decision to enter default judgment was not inappropriate.

¶20 M.H.'s second argument is that the circuit court failed to analyze on the record all required statutory factors in the dispositional phase of the TPR. "While it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor." *Margaret H.*, 234 Wis. 2d 606, ¶35. Our review of the record supports that the circuit court examined each factor on the record and considered the best interests of T.H. during the dispositional stage. It is our task to search for evidence to support the circuit court findings, "not for evidence to support findings the [circuit] court could have reached but did not." *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Therefore, we

---

[4] We note M.H. has made the barest argument that service was not effectuated by the State's choice of newspaper, but she does not develop that argument to assert that the circuit court lacked personal jurisdiction over her in this case—the actual reasoning used by this court to reverse and remand proceedings in *PHH Mortg. Corp. v. Mattfeld*, 2011 WI App 62, ¶11, 333 Wis. 2d 129, 799 N.W.2d 455 (Ct. App. 2011). We decline to address this issue further because it is insufficiently developed. *See Dane Cnty. DHS v. J.R.*, 2020 WI App 5, ¶22, 390 Wis. 2d 326, 938 N.W.2d 614 (explaining that this court does not address insufficiently developed arguments).

The guardian ad litem (GAL) argues that M.H.'s argument is furthermore procedurally incorrect because she never moved the circuit court to reopen the judgment under WIS. STAT. § 806.07; therefore, she has forfeited her challenge to the default judgment. This court will generally not address forfeited arguments made for the first time on appeal. *See Townsend v. Massey*, 2011 WI App 160, ¶23, 338 Wis. 2d 114, 808 N.W.2d 155. We note that M.H. fails to refute this argument.

conclude that the circuit court complied with the statutory mandates and *Margaret H.*

¶21 To the extent that M.H. focuses specifically on the third factor, we interpret her to challenge the sufficiency of the evidence to support this factor: "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." WIS. STAT. § 48.426(3)(c). M.H. contends that the evidence received by the court was insufficient to form the basis of the court's reasoning. "Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *St. Crois Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107. Whether the evidence was sufficient is a question of a law we review independently. *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶17, 333 Wis. 2d 273, 797 N.W.2d 854.

¶22 Here, while we acknowledge M.H.'s assertion that the case manager's testimony was brief, we consider her to mischaracterize the record to assert that the basis for this factor was limited to the case manager's testimony that he did not believe T.H. has substantial relationships with his extended family or that T.H. would not be harmed if the legal relationships with his parents were severed. The record reflects that the case manager also testified about T.H.'s short-term and long-term lack of contact with his mother including that there was no scheduled visitation with her, that he had very limited contact with his older sister, and that earlier attempts to have an extended family foster placement had failed. Further, the circuit court stated in addition to the testimony before the court, it had also reviewed the historical data in the official circuit court file and took judicial notice of the CHIPS action, the juvenile case, and the documentation

in the TPR petition. Accordingly, we conclude that there was credible evidence in the record to support the circuit court's consideration of the third factor.

¶23 We conclude that in determining whether the TPR was in T.H.'s best interests, the circuit court considered the relevant facts, applied the proper standard of law, and demonstrated rational decision making, reaching a conclusion that a reasonable court could reach. *Mable K.*, 346 Wis. 2d 396, ¶39. Accordingly, we conclude its exercise of discretion to terminate M.H.'s parental rights was not erroneous.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.