COURT OF APPEALS
DECISION
DATED AND FILED

January 3, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1884**

STATE OF WISCONSIN

Cir. Ct. No. 2022TP14

IN COURT OF APPEALS
DISTRICT II

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S.L., A PERSON UNDER THE AGE OF 18:

SHEBOYGAN COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

J.L.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: KENT R. HOFFMANN, Judge. *Affirmed*.

¶1 GROGAN, J.[1] J.L. appeals from an order terminating his parental rights to his daughter, Grace.[2] J.L. asserts there was insufficient evidence from which the circuit court could conclude that termination was in Grace's best interests and that the court therefore erroneously exercised its discretion in the disposition phase of these proceedings when it found that termination was in Grace's best interests. This court affirms.

## I. BACKGROUND

¶2 Grace was born in December 2018 to A.P. and J.L., who were not married. Grace and A.P. tested positive for methamphetamines at Grace's birth, which led to an investigation as to whether Grace could go home with her parents. Grace's maternal grandmother initially took Grace into her home as part of Grace's protective placement plan. However, the Sheboygan County Department of Health and Human Services (Department) took temporary physical custody of Grace after approximately one month and placed her with a great aunt (Evelyn) and the aunt's spouse (Oliver) instead.[3] The Department thereafter filed a petition alleging Grace was a child in need of protection or services (CHIPS), and in September 2019, the circuit court found Grace to be in need of protection or services and set conditions to be met before Grace could be returned home.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Grace is a pseudonym used for purposes of confidentiality. *See* WIS. STAT. § 809.81(8).

[3] Evelyn and Oliver are also pseudonyms.

¶3     J.L. did not satisfy the conditions for Grace's return.  Although he had supervised visits with Grace approximately once a week, he sometimes did not attend, arrived late, or showed up unexpectedly.  As a result of these inconsistencies—as well as J.L.'s failure to maintain contact with Janna Harrington, the assigned social worker, and failure to keep scheduled appointments with the Department—Harrington suspended J.L.'s visits with Grace in August 2021.  Harrington informed J.L. that he needed to meet with her in order to resume visits, which never occurred.  Consequently, in June 2022, the Department filed a petition seeking to terminate J.L.'s parental rights.[4]

¶4     Although J.L. initially contested the petition, he ultimately stipulated that grounds existed to terminate his parental rights.  His challenge to the petition came only at the April 2023 dispositional hearing, where he argued it was not in Grace's best interests to terminate his parental rights.

¶5     Only two witnesses testified at the dispositional hearing: (1) Harrington; and (2) J.L.  At the hearing, J.L. argued he had a substantial relationship with Grace and testified about his contacts with her, the presents he sent her, and stated that he loved her.  He also told the court he would do anything to get her back, including remaining sober.  J.L. admitted that when the supervised visits were suspended in August 2021, he had no further contact with Grace but insisted it was because Harrington had told him he could not contact Grace or her foster parents.  Harrington's testimony contradicted this.

---

[4] The petition also sought to terminate A.P.'s parental rights.  This appeal, however, concerns only J.L.

¶6      Harrington testified that J.L. stopped showing up for supervised visits for a number of reasons, and when he did come, he brought Grace sugary foods—despite being told not to because it gave Grace stomachaches. Harrington placed the visits on hold in August 2021 because J.L. was: (1) not honoring the visitation schedule; (2) showing up when not expected; (3) not giving proper notice for his visits; and (4) not having "meaningful interaction" with Grace when he did visit. Harrington also had concerns about J.L.'s noncooperation with her in regard to developing a "family interaction plan[.]" Harrington further testified that, at times, she could not find J.L., he failed to respond to her efforts to reach him, and she had concerns about illegal drug use.

¶7      Harrington met with J.L. in 2022 when he was incarcerated. At that meeting, Harrington shared the rules J.L. needed to follow to resume visitation with Grace, and J.L. signed a stipulation as "to what needed to be taken care of for him to resume seeing [Grace]." Visitation never resumed.

¶8      When asked about the substantial relationship factor (e.g., whether Grace had a substantial relationship with J.L.), Harrington testified she did not think it would be harmful to sever Grace's relationship with him. When asked why she had that opinion, Harrington said:

> I have that opinion because over the course of supervising this case and managing [Grace's] case they have not -- they have not, um, been in a role to make good decisions for her, to provide for her educational needs, her protection needs. They struggle to take care of themselves. Um, there has been over the course of the years struggles with criminal charges and incarcerations. They don't ask about [Grace], um, how she's doing, what she likes to eat, what she likes to do, how her health is. They like to see her, but other than that there is not much more as far as [J.L.] and [A.P.] being in a protective parental role over [Grace]. I've seen [J.L.] many times at the Sheboygan County Detention Center and not once has he asked me how [Grace] is doing.

He hasn't written me, he doesn't write [Grace]. I'm aware he called a couple days ago to speak to [Grace], but that's it. In the four years he's never called once to [the home where Grace is living] to check on her, to see how she's doing, to see what he could do to help out to parent her.

¶9     Harrington also testified that Grace never lived with J.L. during the four years of her life and that she "shared with [J.L. that] he could write [Grace] and he never did that." When asked about whether she was clear with J.L. about the conditions he needed to meet to get Grace back—that he needed to get clean and sober and take parenting classes—Harrington explained that she either could not find J.L. or "he was irate, irritable, difficult, very difficult, resistive." When Harrington offered free services to assist J.L. in meeting these conditions, he refused them. At the conclusion of the hearing, the circuit court found that it was in Grace's best interests to terminate J.L.'s parental rights. J.L. appeals.

## II.  DISCUSSION

¶10     J.L. raises a single issue in his appeal, namely, that the circuit court erroneously exercised its discretion when it found that it was in Grace's best interests to terminate his parental rights because, he says, he had a substantial relationship with Grace, and the circuit court should have placed more weight on that factor.

¶11     J.L. stipulated that grounds existed to find him to be an unfit parent, and therefore, this appeal only involves review of the circuit court's determination at the dispositional hearing. At the dispositional hearing, which occurs once grounds for termination of parental rights are found to exist, WIS. STAT. § 48.424(4), the circuit court determines whether the best interests of the child warrant termination of parental rights. WIS. STAT. §§ 48.427, 48.426(2) ("The best interests of the child shall be the prevailing factor considered by the court in

determining the disposition of all proceedings under this subchapter."); *see also Richard D. v. Rebecca G.*, 228 Wis. 2d 658, 672–73, 599 N.W.2d 90 (Ct. App. 1999).

¶12    Whether termination of parental rights is in the child's best interests is a discretionary decision of the circuit court. *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. This court will not overturn the circuit court's decision as long as the court properly exercised its discretion by considering the pertinent facts, applying the proper standard of law, "and, using a demonstrated rational process, reach[ing] a conclusion that a reasonable judge could reach." *Bank Mut. v. S.J. Boyer Constr., Inc.*, 2010 WI 74, ¶20, 326 Wis. 2d 521, 785 N.W.2d 462.

¶13    In making the best-interests determination, the circuit court must consider the six statutory factors set forth in WIS. STAT. § 48.426(3): (a) the child's likelihood of adoption after termination; (b) the child's age and health at the time of disposition and when removed from the home, if applicable; (c) whether the child has substantial relationships with the parent or other family members and whether severing these relationships would be harmful to the child; (d) the child's wishes; (e) the duration of the child's separation from the parent; and (f) "[w]hether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements." *See also Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B.*, 2002 WI 95, ¶¶28–29, 255 Wis. 2d 170, 648 N.W.2d 402.

¶14    Although the Record in this case reflects that the circuit court considered *all* of the pertinent facts, applied the required statutory factors to those facts, and used a rational process to reach a reasonable determination, it is only necessary to address the substantial relationship factor because that is the only factor J.L. complains about on appeal. Specifically, J.L. contends he had a substantial relationship with Grace that would be harmful to sever and that the court failed to give this factor significant weight in its analysis. Applying the applicable discretionary standard of review, this court rejects J.L.'s argument because the Record demonstrates the circuit court properly exercised its discretion and reached a reasonable decision.

¶15    J.L. testified he had a substantial relationship with Grace because he was present for Grace's birth, he participated in the supervised visits, and he tried to interact with his young daughter. He also testified that he sent Grace Christmas and birthday gifts through the maternal grandmother and that the reason he did not send letters or call Grace after August 2021 was because the social worker told him he was prohibited from doing so. According to J.L., this all established he had a substantial relationship with Grace that would be harmful to sever.

¶16    However, the Record shows that once the supervised visits were suspended in August 2021, J.L. failed to have contact with Grace and failed to make efforts to meet the conditions required to resume visits. Further, the circuit court specifically found that J.L.'s explanation as to why he failed to send a single letter or make a phone call to Grace once supervised visitation stopped was not credible. The circuit court is the factfinder, and it is in a better position than this court to assess the credibility of witnesses. *See Lang v. Lowe*, 2012 WI App 94, ¶16, 344 Wis. 2d 49, 820 N.W.2d 494 (This court's appellate functions do not include weighing witness credibility.). The circuit court found J.L.'s testimony

suspect because although J.L. testified he would follow any rules established to see Grace, "his actions show differently" as "he hasn't been willing to do that to this point[.]"

¶17 With respect to the substantial relationship factor, the circuit court explained that "substantial relationship" "is defined as the acceptance and exercise of the significant responsibility for the daily supervision, education, protection, and care of the child." It noted that "[i]n determining whether the person has a substantial relationship with the child," it could:

> consider such factors including, but not limited to, whether the person has expressed concern for the child or interest in the support, care of, well-being of the child; whether the person has neglected or refused to provide care or support for the child; and whether with respect to a person who is or may be the father, and here the father is determined, it's [J.L.], whether that person has ever expressed concern for or interest in the support, care, and well-being of the child and also the mother during her pregnancy.

¶18 The circuit court found it significant that J.L. never progressed beyond supervised visits, which ended in August 2021. Thus, for the almost two years prior to the dispositional hearing in April 2023, there were no visits, no contacts, not "much of an effort by [J.L.] to communicate with the child in other ways." The circuit court noted that J.L. was incarcerated for some of this time, but in looking at his conduct, it did not see much effort "to really step up and do what [he] need[ed] to do to further [his] relationship with the child by resuming those visits, and all [he] had to do was contact the social worker and go through certain things with the social worker to get those visits going again."

¶19 The circuit court also found it significant that Grace "never spent time with [J.L.] outside of the supervision of other people" and that once the supervised visits were suspended, J.L. really had "not made much, if any, of an

effort to communicate with the child." The court acknowledged that there was a reference to J.L. paying child support at some point in time, but "there's really not been a demonstration here by [J.L.] of supporting this child or … communicating with the child through letters or what have you to the point where a substantial relationship would have been developed."

¶20 In light of the testimony and evidence presented, the circuit court found that Grace did not have a substantial relationship with J.L. but that she did have substantial relationships with her maternal grandmother and half-sister who lives with the maternal grandmother. It further found that Grace's placement for the majority of her life has been with relatives Evelyn and Oliver and that, according to Harrington, Evelyn and Oliver had indicated they would continue Grace's established relationships with her grandmother and half-sister. And, although the court did not specifically mention it in its ruling, the Record reflects that Harrington also testified that Evelyn and Oliver were open to continued contact between Grace and J.L. as long as he was clean and sober—in other words, "safe[.]"

¶21 Based on the foregoing, this court concludes the circuit court's decision demonstrated a proper exercise of discretion. As for J.L.'s claim that the circuit court should have placed more weight on his testimony that, in his opinion, he had a substantial relationship with Grace, this court sees no error. Wisconsin law does not "mandate the relative weight to be placed on" any one factor, but the record "should reflect adequate consideration of and weight to each factor." *Margaret H.*, 234 Wis. 2d 606, ¶¶29, 35. The circuit court here addressed each of the six factors and placed significant weight on whether J.L. had a substantial relationship with Grace. It found he did not, and that finding is not clearly erroneous as it is supported by undisputed facts and Harrington's testimony.

9

¶22     While this court has no reason to doubt that J.L. loves his daughter, that does not change the facts.  Grace was born drug affected, and when the Department offered J.L. opportunities to meet conditions for return, he refused for years.  Grace knows only Evelyn and Oliver as her parents as she has lived with them for almost her entire life.  She is happy, healthy, and in a stable and safe home.  It is clear from J.L.'s testimony at the dispositional hearing that he wants to be clean and sober so that he can be a good parent, and that is laudable.  But a child cannot wait forever for a parent to be a parent.  This court encourages J.L. to maintain sobriety because he is in a relatively unique position wherein his daughter is currently placed with relatives who appear willing to continue the relationship—despite the termination of J.L.'s parental rights—so long as he is clean and sober.

        *By the Court.*—Order affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.