# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2024AP1416**
**2024AP1417**
**2024AP1418**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2022TP15
2022TP16
2022TP174

**IN COURT OF APPEALS
DISTRICT I**

---

APPEAL NO. 2024AP1416

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.D., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

C.M.,

      RESPONDENT-APPELLANT.

---

**APPEAL NO. 2024AP1417**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO C.D., III, A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

        **PETITIONER-RESPONDENT,**

   **V.**

**C.M.,**

        **RESPONDENT-APPELLANT.**

---

**APPEAL NO. 2024AP1418**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.D.M., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

        **PETITIONER-RESPONDENT,**

    **V.**

**C.M.,**

        **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

¶1 WHITE, C.J.[1] Corinna appeals from the orders terminating her parental rights to her children, Alicia, Curtis, and Ava.[2] She argues that the circuit court erroneously exercised its discretion when it concluded that the termination of parental rights (TPR) was in the best interests of the children. She asserts that the circuit court's finding that there was not a substantial relationship between her and the children was not supported by the record. Upon review, we affirm.

**BACKGROUND**

¶2 Corinna is the mother of Alicia, born May 2018, Curtis, born October 2019, and Ava, born October 2021. After the Division of Milwaukee Child Protective Services (DMCPS) responded to a call reporting domestic violence concerns between Corinna and Calvin, the father of the children, Alicia was detained in August 2019. Curtis was taken into DMCPS custody after his birth due to continued domestic violence incidents. Despite a no-contact order and criminal charges, Corinna and Calvin had their third child together, Ava, who was detained by DMCPS immediately after a neonatal intensive care unit (NICU) stay after her birth in 2021.

¶3 DMCPS filed TPR petitions for Alicia and Curtis in February 2022, and Ava in September 2022; the matters were joined in October 2022.[3] The

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] We refer to the family in this matter by pseudonyms to maintain confidentiality and privacy, in accordance with WIS. STAT. RULE 809.19(1)(g).

[3] Calvin's parental rights were also terminated in this matter; however, his rights are not before us in this appeal and we address this no further.

grounds alleged were that the children remain in continuing need of protection or services (continuing CHIPS) and failure to assume parental responsibility. Corinna was sentenced to over four years of imprisonment in August 2022 on multiple charges related to domestic abuse and bail jumping.

¶4      Corinna elected to enter no-contest pleas on each TPR petition in January 2023 on the continuing CHIPS ground.  The circuit court found that the State proved the ground for the TPR petitions through testimony from the family case manager.

¶5      The case proceeded to the dispositional phase, during which testimony was heard from a foster parent for Curtis and Ava; a foster parent for Alicia; the family case manager; a supervised visitation worker; Calvin; and Corinna.  The circuit court explained that the dispositional phase is based on the best interests of the children.  The court stated that while a parent's hopes were relevant to the best interests of the children, this phase focuses on the children. The court noted that "the legislature has recognized that when reunification in the family is not possible, parental rights should be terminated at the earliest feasible time[.]"  The court observed that months or weeks of delay that may seem short to an adult are extraordinarily long for children.  The court stated that "[d]epriving the child of a permanent home deprives the child of his or her childhood[.]"

¶6      After reviewing the evidence and testimony presented at trial, the circuit court addressed the six required statutory factors.[4]  As Corinna's appeal focuses on the third factor, we recite those facts in detail.

_____

[4] In determining the disposition of a TPR petition, the circuit court must consider, but is not limited to, the following six factors:

(continued)

4

¶7     For the third factor, the circuit court considered whether each child had a substantial relationship with each parent, and if so, whether there would be harm to the children to sever those relationships. The court concluded that Curtis and Ava were too young to have "formed the sort of bonds" considered in this analysis. The court considered Alicia to have a bond with her mother, but it was limited by years of separation. The court also acknowledged that the severance of the legal relationship between the parents and children meant that despite any good intentions of the foster or adoptive parents to maintain a relationship, there was no legal requirement for them to continue the relationship. Further, the court expressed concerns about the children's cultural experiences and exposures as Black children being raised by white adoptive parents. However, considering this third factor as applied to the facts of this case, the court concluded that it was neutral or weighed slightly in favor of termination.

¶8     Additionally, the court addressed the other five factors. For the first factor, the court concluded that the likelihood of adoption after termination was

---

(a) The likelihood of the child's adoption after termination.
(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
(d) The wishes of the child.
(e) The duration of the separation of the parent from the child.
(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

"as certain as anything can be in life" with both foster families prepared to adopt the three children. For the second factor, the court concluded there was nothing in the children's ages or current health that would bar them from being adopted if the TPR petitions were granted. For the fourth factor, the court concluded the children were too young to express wishes about termination. For the fifth factor, the court considered the children had been separated from their parents for all of Ava's life, substantially all of Curtis's life, but that Alicia had memories of Corinna. Nonetheless, the court noted that Alicia had expressed that she wants to stay with her foster family. For the sixth factor, the court considered that the children would be able to enter into a more stable and permanent family relationship if the TPR petitions were granted. The court considered the children's current placements to be "excellent," and that past placements had been difficult. The court doubted whether the parents would ever meet the conditions to return the children to their care, leaving the children to remain in foster care.

¶9 The court concluded that "[u]ncertainty is never in a child's best interest" and that the foster families offered the children stability. Ultimately, the circuit court then found it was in the best interests of each child to grant the TPR petitions for both parents.

¶10 Corinna now appeals.

**DISCUSSION**

¶11 Corinna argues that the circuit court's conclusion that the termination of her parental rights was in the best interests of the children was an erroneous exercise of discretion. She asserts that the court's findings on the third factor are not supported by the record. This factor requires the court to consider

6

whether the child has a substantial relationship with the parent or other family members, and whether it would be harmful to the child to sever these relationships. WIS. STAT. § 48.426(3)(c). Corinna contends she has a substantial relationship with her children and it would be harmful to sever those relationships.

¶12 Termination of parental rights is governed by the Wisconsin Children's Code. The first step is a fact-finding hearing to determine whether the grounds exist to terminate parental rights. *See* WIS. STAT. §§ 48.415, 48.424. Here, Corinna pled no-contest to the continuing CHIPS ground and the circuit court heard evidence from the State to prove its case. The second step is the dispositional phase, in which the circuit court decides whether the evidence warrants the termination of parental rights and if the termination is in the best interests of the child. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶23, 246 Wis. 2d 1, 629 N.W.2d 768. "During this step, the best interests of the child are paramount." *Id.* The circuit court must consider at least the six factors in WIS. STAT. § 48.426(3). "[T]he record should reflect adequate consideration of and weight to each factor." *State v Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475.

¶13 "The ultimate determination of whether to terminate parental rights is discretionary with the circuit court." *Id.*, ¶27. We will sustain a circuit court's discretionary decision unless the court erroneously exercised its discretion. WIS. STAT. § 805.17(2). "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane County DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

¶14    Corinna argues that the circuit court's consideration of the third factor failed to take into account her testimony about her love for her children. The record reflects that Corinna testified about her bond with her children, providing love, personal care, and favorite foods for Alicia, Curtis, and Ava. She testified about her plans to improve her life while she is in prison by studying for her GED and developing better coping skills. She feared that the children would harbor resentment toward her if they were not raised by family. She was concerned about instability from the children being with foster families instead of relatives. The court read into the record a letter Corinna wrote to the court expressing her hopes for life after prison—volunteering with other women to protect their children and being with her children.

¶15    We conclude that Corinna's argument misunderstands the third factor by focusing on Corinna's belief in her bond with the children, and not on any substantial attachment by the children to her. Corinna does not develop an argument about her children's attachment to her, much less that the circuit court disregarded evidence of their substantial bond.

¶16    Further, we note that the circuit court considered the third factor neutral to only slightly weighing in favor of termination. The circuit court considered all factors. *Margaret H.*, 234 Wis. 2d 606, ¶35. The court did not need to find all factors weighed in favor of termination to conclude that the TPR was warranted because it was in each child's best interests. *Id.* In our review of the circuit court's discretionary decision making, we search for evidence to support the court's findings, "not for evidence to support findings the [circuit] court could have reached but did not." *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis. 2d 699, 706 N.W.2d 166. Here, the circuit court thoroughly considered

8

the statutory factors and the facts of these cases. It focused on the children and their current and future stability.

¶17     Additionally, Corinna argues that the circuit court erroneously exercised its discretion when it relied upon the foster parents' promises to maintain a relationship with the children's biological family because such a promise is unenforceable. This argument does not change our analysis. The record reflects that the circuit court considered the promises to be in "good faith" but acknowledged that the TPR severed the legal relationships with Corinna. It noted that Wisconsin did not offer open adoption, which could change the analysis. *See* **Margaret H.**, 234 Wis. 2d 606, ¶¶28-30 (discussing the circuit court's right to afford due weight on an adoptive parent's promise to continue visitation while also bearing in mind that such promises are legally unenforceable).

## CONCLUSION

¶18     For the reasons stated above, we conclude that the circuit court considered the relevant facts under the proper standard of law and employed rational decision-making to reach a decision a reasonable court could reach. **Mable K.**, 346 Wis. 2d 396, ¶39. We conclude that the circuit court properly acted within its discretion when it terminated Corinna's rights to her children.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.