COURT OF APPEALS
DECISION
DATED AND FILED

March 5, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2491**

Cir. Ct. No. 2024TP9

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.L.J.,
A PERSON UNDER THE AGE OF 18:

JEFFERSON COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

G.J.J.,

RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Jefferson County: THERESA A. BECK, Judge. *Affirmed*.

¶1 GRAHAM, P.J.[1] G.J.J. appeals an order that terminated her parental rights to her son, J.L.J. G.J.J. argues that, when determining whether termination of her rights was in J.L.J.'s best interests, the circuit court misapplied the statutory factor that addresses whether J.L.J. "has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." *See* WIS. STAT. § 48.426(3)(c). I affirm because I conclude that the circuit court's reasoning fell within the limits of a proper exercise of discretion.

## BACKGROUND

¶2 J.L.J. was born when G.J.J., who was subject to guardianship and protective placement orders, was 19 years old. Due to concerns that G.J.J. was not able to care for a newborn, Jefferson County removed him from G.J.J.'s care two days after his birth and placed him with foster parents. Around the same time, the County filed a "CHIPS" petition: one seeking to have J.L.J. adjudicated a child in need of protection and services. Eventually, the circuit court entered an order in the CHIPS case that continued J.L.J.'s placement with his foster parents, and J.L.J. remained in that placement throughout the termination of parental rights ("TPR") proceedings that are described below.

¶3 The County filed a petition to terminate G.J.J.'s parental rights to J.L.J. when he was about two and a half years old. Around the same time, the County also filed a petition to terminate G.J.J.'s parental rights to another child who is younger than J.L.J. and had been placed with G.J.J.'s mother. G.J.J. did

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

2

not appeal the order terminating her rights to her younger child, and this appeal solely concerns the TPR proceedings with respect to J.L.J.[2]

¶4     The petition alleged two grounds for termination: that J.L.J. continued to need protection and services, and that G.J.J. had failed to assume parental responsibility for J.L.J.  After a court trial, the circuit court found that the County proved both grounds, and the case proceeded to the dispositional phase.  A County social worker and G.J.J. both testified during an evidentiary hearing on disposition.

¶5     After hearing the testimony and arguments from the parties, the circuit court announced its decision.  In so doing, the court addressed each of the six statutorily mandated factors listed in WIS. STAT. § 48.426(3).  With respect to the third factor, whether J.L.J. "has substantial relationships with the parent or other family members, and whether it would be harmful to [J.L.J.] to sever these relationships," § 48.426(3)(c), the court said the following:

> Whether the children have substantial relationships with the parent, other family members, and whether it's harmful to those children to sever those relationships. Again, we have two children slightly different in age, but still relatively young.  They're both under the age of five.  They were separated from their mother at birth, placed in what appear to be very stable placements.
>
> There was some testimony … that the children have had supervised visitation with their mother for long periods of time.  [G.J.J.] did regularly attend those or consistently attend those visits before the Court entered the injunction suspending contact….
>
> ….

---

[2] The County also petitioned to terminate J.L.J.'s father's parental rights; the father agreed to the termination of his rights and has not appealed.

[G.J.J.] has, I think, been very clear about the fact she cares for her children a great deal; that she loves her children and she would love nothing more than to have both of her children come back to her and live with her. But as very succinctly pointed out, that's not going to happen tomorrow. It may never happen ever.

But that doesn't mean, [G.J.J.], that you don't love your children. It doesn't mean that you haven't done everything within your power, as authorized by the Court, to establish that you are a loving mother to both kids. I don't think anyone doubts that here.

The issue really comes down to [does J.L.J.] have a substantial parental relationship with … either parent…. [The social worker] testified related to this issue that she has been the ongoing case manager for both [children] since almost the inception of their cases. She has seen the children's interaction with the current placements. I do recall that she had also had the opportunity, if not personally observe but to observe through collateral sources, the interactions between [the children] and [G.J.J].

We've had a long period of time when [the children] have had limited contact with [G.J.J.]. They have integrated into the homes of [the foster parents and G.J.J.'s mother]. [The social worker] testified that with respect to [J.L.J.], that [J.L.J.] refers to [the foster parents] as mom and dad; that [J.L.J.] engages well with [the foster parents]; that [J.L.J.] responds to them.

[J.L.J.] takes direction from them. [J.L.J.] responds to them…. [J.L.J.] seeks assurance and safety from them. And in [the social worker's] opinion, based on what she has seen, [J.L.J.] identifies [the foster parents] as mom and dad. [G.J.J.], certainly, has an attachment to her children. I just don't think it's as strong as the one [J.L.J.] has with [the foster parents].

Understanding that there have been some impediments for [G.J.J.], most significantly it has been her ongoing struggles with mental health, she has made some pretty significant strides. She's testified today she's employed. She's got a two-bedroom apartment coming. She appears to be financially stable. But we do have a child, at least with [J.L.J.], who has a relationship with [G.J.J.] but I don't think that it's a substantial parental relationship with [G.J.J.].

….

4

Then there comes down to the issue of whether or not [the children] have a substantial relationship with other family members. This really centers on the issue of the siblings. We've heard some testimony, I think some of it came from [G.J.J.], that based upon her observations of [the children] together, she does believe they have a bond…. The reality is, we have two children who have never lived in the same house.

They have had visits….

Visits are not the same quality as living in the same house. I don't doubt that [the children] know who each other are. I don't doubt that they've had fun together, but there is nothing in the record that convinces the Court to the level of clear and convincing evidence that [the children] have such a bonded relationship that either one of them would be harmed if that relationship is severed. Now, it's possible down the road, maybe they have contact with each other. The Court has no guarantee of that and doesn't consider that it's a possibility.

¶6 The circuit court found that it was in J.L.J.'s best interests to terminate G.J.J.'s parental rights, and it entered an order to that end. G.J.J. appeals.

## DISCUSSION

¶7 In Wisconsin, there is a two-part statutory procedure for an involuntary termination of parental rights. *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first "grounds" phase, the petitioner must prove the existence of "one or more of the statutorily enumerated grounds for termination" by clear and convincing evidence. *Id.*; WIS. STAT. § 48.31(1). If such grounds are found to exist, the circuit court then proceeds to the second "dispositional" phase, in which it decides whether it is in the best interests of the child that the parent's rights be terminated. *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2). The arguments in this appeal concern the dispositional phase.

5

¶8     The decision about whether it is in the child's best interests to terminate parental rights is committed to the circuit court's discretion. ***Mrs. R. v. Mr. and Mrs. B.***, 102 Wis. 2d 118, 131, 306 N.W. 2d 46 (1981). This court must affirm a circuit court's discretionary decision unless it constitutes an erroneous exercise of discretion. ***State v. Abbott Laboratories***, 2013 WI App 31, ¶31, 346 Wis. 2d 565, 829 N.W.2d 753. A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. ***Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶9     Although a circuit court's decision in the dispositional phase is discretionary, the statutes provide six factors that the court must consider. WIS. STAT. § 48.426(3). The third factor is "[w]hether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships." § 48.426(3)(c). "Substantial relationships" include "the child's emotional and psychological connections to the child's birth family." ***State v. Margaret H.***, 2000 WI 42, ¶19, 234 Wis. 2d 606, 610 N.W.2d 475.

¶10    G.J.J. argues that the circuit court's discussion of this factor reflects an erroneous exercise of discretion for two reasons, which I discuss in turn.

## I. Comparison Between G.J.J. and the Foster Parents

¶11    First, G.J.J. argues that, rather than assessing the relationships between J.L.J. and his birth family, the circuit court undertook to compare those relationships to the relationships that J.L.J. had with his foster family. In so doing, G.J.J. argues, the court failed to apply the "proper standard of law" or use a "demonstrated rational process." ***Loy***, 107 Wis. 2d at 415.

¶12 G.J.J. points to ***State v. Y.P.V.***, Nos. 2022AP1935 and 2022AP1936, unpublished slip op. (WI App Mar. 21, 2023).[3] In that case, the birth mother whose rights had been terminated argued that the circuit court erred because, rather than considering the harm that could arise from severing the children's relationships with their birth mother, as the statute mandates, the court instead considered the potential harm to the children from severing their relationships with their foster mother. ***Id.***, ¶28; *see* WIS. STAT. § 48.426(3).

¶13 In its decision reversing the circuit court's exercise of discretion, this court first noted that the six statutory factors are non-exclusive—a circuit court "may consider additional facts and factors." ***Y.P.V.***, Nos. 2022AP1935 and 2022AP1936, ¶30. Therefore, it was not improper for the circuit court to have considered the bond between the children and their foster mother as part of its exercise of discretion. ***Id.***

¶14 Nevertheless, this court concluded that the circuit court did err because, rather than considering the children's bond with their foster mother in addition to the statutorily required consideration of their bond with their birth mother, it considered the former nearly to the exclusion of the latter. ***Id.***, ¶31-33. In particular, although the circuit court "concluded that it would be difficult for the [children] to sever the legal relationship with" their birth mother, "it focused on a possible continuation of a 'co-parenting' relationship" between the birth mother and the foster mother. ***Id.***, ¶31. This court noted that any promise by a foster parent to maintain such a relationship between child and birth parent is "'legally

---

[3] An authored, unpublished, one-judge opinion issued on or after July 1, 2009, may be cited for its persuasive value pursuant to WIS. STAT. RULE 809.23(3)(b).

unenforceable.'" *Id.* (citing *Margaret H.*, 234 Wis. 2d 606, ¶30). This court further determined that, by focusing on the children's relationships with their foster mother and the possibility that their relationships with their birth mother would not actually be severed, the circuit court failed to fulfill its statutory mandate to consider the harm that could come to the children if their relationships to their birth mother were severed. *Y.P.V.*, Nos. 2022AP1935 and 2022AP1936, ¶32.

¶15 Here, G.J.J. contends that the circuit court erred in a manner similar to the circuit court in *Y.P.V.* G.J.J. notes that, at the outset of the court's discussion of the third factor, it observed that J.L.J. had been removed from G.J.J.'s care since birth and had been in a "very stable" placement with the foster family. Then, just after commenting on the consistent visits between G.J.J. and J.L.J., the court observed that J.L.J. calls the foster parents "mom and dad" and relates to them in ways typical of young children to their parents. Finally, the court expressly compared the relationship that J.L.J. has with G.J.J. with the relationship that J.L.J. has with the foster parents, saying that while G.J.J. "has an attachment to her children[,] I just don't think it's as strong as the one [J.L.J.] has with [the foster parents]."

¶16 G.J.J. argues that this mode of reasoning was improper and that the dispositional hearing was "not a contest between [G.J.J.] and the foster family." G.J.J. further points out that in *Y.P.V.*, this court appeared to fault the circuit court for contrasting "the children's substantial relationship to [the birth mother] … to the foster mother throughout the court's considerations," placing the two sets of relationships in "stark contrast." *Y.P.V.*, Nos. 2022AP1935 and 2022AP1936, ¶¶29-30.

8

¶17    G.J.J. is correct in observing that the third factor does not call for a comparison or weighing of a child's relationships with their birth family against the child's relationships with other parties.    WIS. STAT. § 48.426(3)(c). Nevertheless, as *Y.P.V.* noted, the six statutory factors are not the only permissible considerations at a dispositional hearing.    *Y.P.V.*, Nos. 2022AP1935 and 2022AP1936, ¶30 (citing *Sheboygan County v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402).    Nothing in the statutes prohibits a circuit court from considering a child's relationships with foster parents.    And more generally, when a circuit court is directed to consider the relationships between a child and the child's birth family, it is not unreasonable for that court to consider whether aspects of typical parent-child bonds are present within those relationships, or whether those aspects are present in other relationships the child may have, including with foster parents.    *Y.P.V.* did not suggest that comparisons between birth- and foster-family relationships are forbidden in the dispositional phase; it reversed the circuit court's disposition because the court failed to consider the relationships the children had with their birth mother or the likely harms from severing those relationships.    *Y.P.V.*, Nos. 2022AP1935 and 2022AP1936, ¶32.

¶18    Here, in contrast, the circuit court's remarks convey that it did consider the relationships between J.L.J. and his birth family—and particularly, both J.L.J.'s relationship with G.J.J. and his relationship with G.J.J.'s other child. The court noted that J.L.J. had been separated from G.J.J. at birth.    It noted that J.L.J. had consistent supervised visitation with G.J.J. "for long periods of time."    It asserted its belief that G.J.J. loved and cared for J.L.J. a great deal.    It noted the social worker's testimony regarding interactions between G.J.J. and J.L.J., and the limited contact between G.J.J. and J.L.J.    And, after noting that J.L.J. appears to have a parent-child relationship with the foster parents, the court observed that

although G.J.J. and J.L.J. have an attachment, the court did not believe that attachment was as strong as the one between J.L.J. and the foster parents. It also considered the other existing relationship between J.L.J. and J.L.J.'s birth family: the relationship with G.J.J.'s other child, J.L.J.'s sibling. The court concluded that the two children knew each other and had played together, but they were not so bonded that either one would be harmed if the relationship were severed. I conclude that the court's comments concerning J.L.J.'s relationship with the foster parents do not demonstrate that it failed to apply a "proper standard of law" or use a demonstrated rational process in considering the factor mandated by WIS. STAT. § 48.426(3)(c).

## II. Substantial Relationship vs. Substantial Parental Relationship

¶19    G.J.J. also argues that the circuit court erred because, rather than considering whether J.L.J. had a "substantial relationship[]" with G.J.J., as WIS. STAT. § 48.426(3)(c) requires, the court's comments twice suggested it was instead considering whether there was a "substantial *parental* relationship."

¶20    As G.J.J. notes, the term "substantial parental relationship" is used in TPR cases, but it is used in relation to the grounds phase rather than the dispositional phase. Specifically, one ground for termination of parental rights is that the parent has failed to "assume parental responsibility," which requires a showing that the parent has "not had a substantial parental relationship with the child." WIS. STAT. § 48.415(6)(a). In this context, "substantial parental relationship" is defined to mean "the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child," and the statute provides a list of factors to guide a court's consideration of whether a "substantial parental relationship" exists. § 48.415(6)(b).

¶21     G.J.J. further observes that the presence or absence of a "substantial parental relationship" was at issue in the grounds phase of this TRP proceeding, because failure to assume parental responsibility was one of the grounds that the County alleged. The County prevailed on this ground in the first phase of the proceeding, so by the time of disposition, the circuit court had already determined that there was no "substantial parental relationship" between G.J.J. and J.L.J.

¶22     Then, during the dispositional hearing, the circuit court used the term "substantial parental relationship" twice with respect to J.L.J. First, it said "[t]he issue really comes down to [does J.L.J.] have a substantial parental relationship with … either [G.J.J. or his birth father]"; later, it concluded by saying that "we do have a child, at least with [J.L.J.], who has a relationship with [G.J.J.] but I don't think that it's a substantial parental relationship."

¶23     These remarks, in this context, give me some pause—if the circuit court's consideration was focused on whether there was a "substantial parental relationship" rather than a "substantial relationship," that might amount to the application of an improper standard of law. However, after evaluating the remarks in light of the entirety of the court's comments on the third factor, I am persuaded that they reflect a slip of the tongue rather than the application of an improper standard of law.

¶24     I reach this conclusion for three reasons. First, the circuit court's comments do not suggest that it regarded its prior finding of no "substantial parental relationship" during the grounds phase as conclusive of, or even relevant to, the question posed for the dispositional phase by WIS. STAT. § 48.426(3)(c). If the court had been confused about the meaning of the § 48.426(3)(c) factor and had believed it to raise the same question the court had already answered, one

might expect the court to have referred to that earlier finding in some way, but it did not. Second, at no point in its comments at disposition did the court refer to either the definition of "substantial parental relationship" or to the factors that WIS. STAT. § 48.415(6)(b) provides for evaluating whether a "substantial parental relationship" exists during the grounds phase. Again, had the court mistakenly believed the two questions were one and the same, it might have shown as much by citing the statutory meaning given to "substantial parental relationship." Relatedly, the court's discussion of the relationship between G.J.J. and J.L.J. did not suggest that the court was disregarding any aspect of G.J.J.'s love, care, and efforts for J.L.J., or any aspect of J.L.J.'s bond to G.J.J., as being insufficiently "parental." Finally, although the court did use the term "substantial parental relationship" in its discussion of the third factor, the court then used the correct term later in its remarks, saying that it could not "find that the child had substantial relationships with [G.J.J.] or between J.L.J. and [his birth father]."

¶25    For all these reasons, I conclude that the circuit court's reasoning fell within the limits of a proper exercise of discretion.

    *By the Court.*—Order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.